No. 76,092

STATE OF KANSAS, *Appellee/Cross-appellant*, v. JERRY R. CHASTAIN, *Appellant/Cross-appellee.*
(960 P.2d 756)

Opinion filed May 29, 1998.

*Joe Dickinson,* of Newton, argued the cause and was on the brief for appellant/ cross-appellee.

*Jennifer M. Wieland,* assistant county attorney, argued the cause, and *Carla J. Stovall,* attorney general, was with her on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

DAVIS, J.: The defendant, Jerry R. Chastain, was charged with involuntary manslaughter arising out of an automobile accident resulting in the death of Robert Glenn. The jury returned a verdict of guilty to the lesser included offense of driving while under the influence of alcohol. He appeals, claiming that the results of his breath test should have been suppressed and that the trial court abused its discretion in the sentence imposed. The State cross-appeals on two questions reserved: (1) the exclusion of horizontal gaze nystagmus testing and (2) instructions on involuntary manslaughter. We agree with the trial court's resolutions of both questions reserved. We affirm the conviction and sentence.

The questions raised by this appeal are questions of law and do not involve disputed questions of facts surrounding the automobile accident. At trial, the defendant argued that Glenn caused his own death by proceeding into the intersection without stopping at a

stop sign. The State claimed the defendant was operating his vehicle at a high rate of speed under the influence of alcohol, causing Glenn's death. Those facts necessary for resolution of the legal issues involved are set forth in the discussion of the issues raised by the parties.

## SUPPRESSION OF THE BREATH TEST

The defendant contends that the results of his breath test should have been suppressed because the arresting officer unreasonably prevented him from taking a blood alcohol test he requested before and after the breath test.

Sergeant A.J. Wuthnow, after conducting certain field sobriety tests at the scene, took the defendant to the station and gave him a breath test. The defendant was unable to blow a sufficient amount of air into the machine. Thus, the test resulted in a deficient sample, although the machine registered a .210 concentration of alcohol. Prior to the administration of the breath test, the defendant requested a blood alcohol test. Wuthnow correctly explained that the defendant would have to take the breath test before being allowed to take the requested blood test. After completing the breath test, Wuthnow told the defendant that he would take him to the hospital to get his requested blood test. Wuthnow also told the defendant that the blood test would register higher. The defendant decided not to take the blood test and told Wuthnow to forget it.

Both parties suggest that the trial court did not resolve this issue. Two district judges handled pretrial motions in this case. The first judge to hear the suppression motion resolved against the defendant the question of whether proper procedures were utilized in the operation of the breath testing machine. During the proceeding, Wuthnow mentioned that he informed the defendant that the results of the blood test would be higher. Defense counsel indicated that he would raise the issue of unreasonable interference by a later motion.

The second district judge, dealing with another pretrial motion concerning the admissibility of the horizontal gaze nystagmus test, refused to hear additional evidence on the issue of unreasonable

interference with the defendant's requested blood test. After consulting with counsel for the State, the judge was convinced that the issue had been resolved in the prior suppression hearing. The defendant did not object and the matter was not resolved by the second district judge. However, we conclude that the essential facts concerning this issue are undisputed and that the record permits us to resolve the legal issue without remanding for further hearing.

The State argues that under K.S.A. 1994 Supp. 8-1001(f)(2), the failure of a person to provide an adequate breath sample constitutes a refusal unless the person shows that the failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs. Thus, according to the State, the defendant's deficient sample constituted a refusal, with the result that no additional testing was allowed. We find no merit in the State's contention. K.S.A. 1994 Supp. 8-1001(f)(1) does not by its terms cut off the right to an independent test provided for under K.S.A. 8-1004 which states:

"Without limiting or affecting the provisions of K.S.A. 8-1001 and amendments thereto, the person tested shall have a reasonable opportunity to have an additional test by a physician of the person's own choosing. In case the officer refuses to permit such additional testing, the testing administered pursuant to K.S.A. 8-1001 and amendments thereto shall not be competent in evidence."

While an accused who refuses the arresting officer's test may not be eligible for independent testing under K.S.A. 8-1004, an accused who submits to the requested breath test but blows an inadequate sample retains his or her right under the provisions of K.S.A. 8-1004. Even though under the provisions of K.S.A. 1994 Supp. 8-1001(f)(2), the blowing of an inadequate sample may constitute a refusal unless the person shows that the failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs, the opportunity for the accused to show such a medical condition for his or her inability may not be demonstrated until a later time. Thus, a person who provides an inadequate breath sample is still entitled to an independent test under the provisions of K.S.A. 8-1004.

Moreover, even a deficient sample, as in the present case, registers a blood alcohol level. K.S.A. 1994 Supp. 8-1013(f)(2) pro-

vides that readings obtained from a partial alcohol concentration test on a breath testing machine are admissible into evidence. See *State v. Maze*, 16 Kan. App. 2d 527, 533-34, 825 P.2d 1169 (1992). The purpose expressed in K.S.A. 8-1004 is to allow an accused an opportunity to secure independent testing in order to rebut the results of police testing, which may be used by the State upon trial. Thus, the provisions of K.S.A. 8-1004 apply to an accused who, rather than refusing a test, simply failed to provide an adequate breath sample. The defendant in this case provided a deficient sample which was introduced into evidence by the State. The defendant in this case retained his right to an independent test.

The Court of Appeals, in *State v. George*, 12 Kan. App. 2d 649, Syl. ¶ 4, 754 P.2d 460 (1988), correctly noted:

"While the State is not required to provide a DUI suspect with a free additional alcohol concentration test, it may not unreasonably interfere with the suspect's reasonable attempts to secure an additional test, at his own expense, by a physician by his own choosing, for the purpose of attempting to secure evidence for his defense at or near the crucial time under consideration."

The defendant contends Wuthnow's statements that a blood test would show higher levels of alcohol wrongfully persuaded him from taking the blood test and resulted in an unreasonable interference by the State with his rights under the provisions of K.S.A. 8-1004.

The defendant relies upon *Lau v. State*, 896 P.2d 825 (Alaska App. 1995). Lau was arrested for suspicion of driving under the influence and a breath test indicated that his blood alcohol level was .201. However, Lau testified that when he was asked by officers whether he wanted to take an independent blood test, another officer with whom Lau was acquainted mouthed the word "no" and made a hand gesture. Lau stated he wanted an independent test but later conferred with the other officer who told him that the blood test would "nail" him. Lau, therefore, decided not to take the test. Under the totality of circumstances, the Alaska Court of Appeals reversed the trial court's determination that no interference occurred. The Court of Appeals concluded that the officer's conduct had prevented Lau from obtaining an independent

test that he would otherwise have obtained, and the breath test should have been suppressed. 896 P.2d at 828-29.

A similar result was reached in *People v. Underwood,* 153 Mich. App. 598, 396 N.W.2d 443 (1986). Underwood demanded that an independent test be performed. However, the arresting officer "talked him out of" having the blood test saying that the test was "silly and stupid, that the test would show a higher blood alcohol level and that the defendant was going to go to jail anyway." 153 Mich. App. at 600. The Michigan Court of Appeals determined that although Underwood eventually chose not to take the blood test, the officer's conduct deprived him of his opportunity to take an independent test, and the court reversed Underwood's conviction. 153 Mich. App. at 600.

In *Hattaway v. State,* 191 Ga. App. 812, 813, 383 S.E.2d 140 (1989), Hattaway testified that she asked specifically about a blood test but was told by officers that it was too time consuming and later told by the same officers that it was " 'possibly a hassle' " and she instead decided to take a second breath test. The court noted that there was conflicting testimony concerning the circumstances surrounding the second test and that the interpretation was for the trial court to decide. 191 Ga. App. at 814. The court then stated that there was no evidence of actual coercion and the trial court did not err in denying Hattaway's motion to suppress. 191 Ga. App. at 814.

A synthesis of the above cases demonstrates that officers may not unreasonably interfere with an accused's right to obtain additional testing and that in certain circumstances, comments by officers which persuade an accused not to take an additional test will constitute an unreasonable interference with that right. Whether such comments constitute coercion and rise to the level of unreasonable interference depends upon the facts and circumstances of each particular case.

The undisputed facts in this case demonstrate that the defendant was told by Wuthnow that he could obtain an additional test and that Wuthnow would transport him to obtain one. The record fails to demonstrate any coercion by Wuthnow who testified he was not trying to discourage the defendant from taking any further inde-

pendent tests by his statement that a blood test would show higher. As a matter of law, the statement of Wuthnow to the defendant that a blood test would show higher, without any further evidence of unreasonable interference or coercion, does not establish the defendant was deprived of his right for further testing under the provisions of K.S.A. 8-1004.

## ABUSE OF DISCRETION IN SENTENCE

The trial court exercised its sound discretion in imposing a sentence less than the maximum authorized by law. The defendant's contention of abuse is without merit. In *State v. Vanderveen*, 259 Kan. 836, 842-43, 915 P.2d 57 (1996), we said:

"It is the sentencing judge alone who determines the appropriate sentence to be imposed or other disposition of the case by exercising his or her best judgment, common sense, and judicial discretion after considering all of the reports, the defendant's background, the facts of the case, and the public safety. A sentence imposed within the statutory guidelines will not be disturbed on appeal if it is within the trial court's discretion and not a result of partiality, prejudice, oppression or corrupt motive."

The record in this case clearly demonstrates no abuse of discretion.

## QUESTIONS RESERVED

### (1) Horizontal Gaze Nystagmus Testing

We turn now to the questions reserved by the State. The State first complains that the trial court erred in refusing to admit evidence of horizontal gaze nystagmus testing. In 1992, this court addressed the question of whether horizontal gaze nystagmus testing as scientific evidence had achieved general acceptance within the relevant scientific community and, thus, could be admitted without establishing the requisite foundation under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). *State v. Witte*, 251 Kan. 313, 836 P.2d 1110 (1992). Our thorough examination of this question at that time clearly demonstrated that horizontal gaze nystagmus testing had not achieved general acceptance within the relevant scientific community. We acknowledge that since *Witte*, four additional jurisdictions have concluded otherwise. See *People v. Buening*, 229 Ill. App. 3d 538, 545-46, 592 N.E.2d 1222 (1992); *Schultz v. State*, 106 Md. App. 145, 164-65, 664 A.2d 60 (1995);

*City of Fargo v. McLaughlin,* 512 N.W.2d 700, 706 (N.D. 1994); *State v. O'Key,* 321 Or. 285, 316, 899 P.2d 663 (1995) (applying standard from *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 [1993], and determining as part of that standard that horizontal gaze nystagmus testing is generally accepted within the relevant scientific community). However, we are not satisfied that such testing has achieved general acceptance within the relevant scientific community. *Witte* remains the law in this state.

The State contends that it presented sufficient evidence to establish the requisite scientific reliability. We have reviewed the testimony of Marcelline Burns, Ph.D., a doctor in psychology, who was called by the State for this purpose. While her credentials are impressive, we agree with the trial court's ruling at the conclusion of Dr. Burns' testimony:

"*State v. Witte,* raises a number of questions, none of which have been answered here today. There are a number of medical conditions which this witness has testified that she is not qualified to answer medical questions regarding, and these are issues that were specifically addressed in *State v. Witte.* And questions that were addressed, this appears to be a bootstrapped-type of testing procedure that has not been shown—there are a number of other matters that need to be addressed before the scientific reliability of this testing will be allowed."

## (2) Instructions on Causation in Involuntary Manslaughter

For its second question reserved, the State argues that neither involuntary manslaughter nor vehicular homicide contemplates the consideration of fault of the victim. This issue surfaced during jury deliberations when the jury asked the question whether the fault of each driver is to be considered when interpreting the phrase "unintentionally killed" in involuntary manslaughter, K.S.A. 21-3404, and vehicular homicide, K.S.A. 21-3405, as a lesser included offense of involuntary manslaughter.

The trial court responded by informing the jury that the fault or lack of fault of the decedent Glenn was a circumstance to be considered along with all other evidence to determine whether the defendant's conduct was or was not the direct cause of Glenn's death. The State contends that this inaccurate construction in-

formed the jurors that contributory negligence could be used as a defense.

The response of the trial court in this case is clearly the law in this state. In *State v. Gordon*, 219 Kan. 643, 653, 549 P.2d 886 (1976), we stated:

"While contributory negligence is no defense in a prosecution for vehicular homicide, it is a circumstance to be considered along with all other evidence to determine whether appellant's conduct was or was not the proximate cause of decedents' deaths. In some instances, a decedent's contributory negligence may have been a substantial factor in his death and a superseding cause thereof; it may have intervened between a defendant's conduct and the fatal result so as to be itself the proximate cause. [Citations omitted.]"

The same situation applies to involuntary manslaughter where an automobile is concerned. See *State v. Betts*, 214 Kan. 271, 278, 519 P.2d 655 (1974). In *Betts*, we held that contributory negligence is not a defense in a homicide case but noted that a jury could acquit if it found that the victim's conduct was the sole cause of the death and that the defendant's drinking had nothing to do with it.

The State argues that the rule in *Gordon* should not be followed because both K.S.A. 21-3404 and K.S.A. 21-3405 were amended in 1993, and language relating to causation deleted. Therefore, according to the State, causation is no longer a requirement.

At the time *Gordon* was decided, K.S.A. 21-3405 was essentially the same as it is now, except that it contained an additional section which stated:

"(2) This section shall be applicable only when the death of the injured person ensues within one (1) year as the proximate result of the operation of a vehicle in the manner described in subsection (1) of this section." K.S.A. 21-3405 (Ensley 1988).

This section was deleted by the legislature in 1992 as part of S.B. 358. See L. 1992, ch. 298, § 7. The Comments of the Judicial Council indicate that the section was deleted because the 1-year limitation unnecessarily limits liability and is not found in other homicide statutes. See Comments of the Kansas Judicial Council to S.B. 358, p. 9. There appears to be no intention to actually

change the proximate cause requirement. Indeed, the Comment to PIK Crim. 3d 56.07 still cites *Gordon* for the proposition that

"[c]ontributory negligence of the decedent is no defense. It is a circumstance to be considered along with all other evidence to determine whether the defendant's conduct was or was not the direct cause of decedent's death. The decedent's negligence may have been such a substantial factor in his death as to be itself the cause."

K.S.A. 21-3404 contained no proximate cause language prior to the 1992 amendment and was not significantly affected by S.B. 358. See L. 1992, ch. 298, § 6. Thus, the State's argument that the 1992 amendment changed the causation requirement in this statute is without merit.

Further, the State's argument neglects one important point. Although the proximate cause language was deleted, unintentionally or not, from K.S.A. 21-3404, both K.S.A. 21-3404 and K.S.A. 21-3405 still require that the conduct of the defendant cause the death of the victim. This is reflected in the PIK instructions for each offense, both of which inform the jury that the State is required to prove that the defendant unintentionally killed the victim. See PIK Crim. 3d 56.06 (involuntary manslaughter); PIK Crim. 3d 56.07 (vehicular homicide).

Affirmed.