(268 P.3d 498)
No. 104,940

CITY OF WICHITA, *Appellee*, v. WILLIAM J. MOLITOR, *Appellant*.

Opinion filed January 13, 2012.

*E. Jay Greeno* and *Kristen B. Patty*, of Wichita, for appellant.

*Michael J. Hoelscher*, assistant city attorney, and *Gary E. Rebenstorf*, city attorney, for appellee.

Before BRUNS, P.J., LEBEN and STANDRIDGE, JJ.

BRUNS, J.: William J. Molitor appeals his misdemeanor conviction for driving under the influence (DUI). On appeal, he contends that the district court erred by denying his motion to suppress a preliminary breath test (PBT) and an Intoxilyzer breath test. Specifically, Molitor argues that it was error for the district court to consider evidence of a horizontal gaze nystagmus (HGN) test in determining whether a police officer had reasonable suspicion to request that he submit to a PBT. We conclude that it was appropriate for the district court to consider the results of the HGN test administered to Molitor as part of its reasonable suspicion analysis under K.S.A 2010 Supp. 8-1012(b). We further conclude that even without the HGN evidence, there was reasonable suspicion for the police officer to believe that Molitor had been operating a vehicle under the influence of alcohol. Thus, we affirm.

## FACTS

Molitor left Jerry's Bar and Grill in Wichita, Kansas, shortly after 11 p.m. on February 28, 2009. A few minutes later, two police officers—Jeremy Diaz and Jeremy Vogel—saw Molitor making a right turn without using his turn signal. The two officers were in the same police unit working a DUI saturation in the area. When the police officers stopped Molitor's vehicle for the traffic infraction, they saw his front passenger-side tire strike the curb and come to stop with the tire halfway on the curb.

After approaching the driver's side window, Officer Diaz requested Molitor's driver's license and proof of insurance. When speaking with Molitor, Officer Diaz noticed a strong odor of al-

cohol. He also saw that Molitor's eyes were watery and bloodshot. When asked if he had been drinking, Molitor responded that he had two or three beers. Officer Diaz then had Molitor exit the car so he could administer field sobriety tests.

The first test administered was the HGN, in which Officer Diaz held a pen approximately 12 to 15 inches in front of Molitor's face and asked him to follow the pen with his eyes—keeping his head straight—as it was moved from side to side. According to Officer Diaz, Molitor displayed six out of six possible clues of intoxication during the HGN test.

Next, Officer Diaz administered the walk-and-turn test. Although a score of two or more clues on the walk-and-turn test is indicative of intoxication, Molitor scored only one clue out of eight possible clues. Officer Diaz then administered the one-leg-stand test. Once again, although a score of two or more clues on the one-leg-stand test is indicative of intoxication, Molitor scored only one clue out of four possible clues.

After administering the field sobriety tests, Officer Diaz requested that Molitor submit to a PBT. Molitor agreed to take the test and registered a blood alcohol content (BAC) of .090—which is above the legal limit. After receiving the PBT result, Officer Diaz requested that Molitor take a breath alcohol test using an Intoxilyzer 8000 machine. The test was conducted about an hour after the initial stop and revealed a BAC of .091.

Molitor was charged and convicted in Wichita Municipal Court of driving under the influence of alcohol and failing to signal a turn. He then exercised his right to appeal de novo to Sedgwick County District Court. Prior to trial, Molitor filed a motion to suppress both breath tests, arguing that the officers did not have reasonable suspicion to request that he submit to a PBT.

At the suppression hearing, Officer Diaz testified about the events on the night of February 28, 2009. He also testified that he had received training at the Wichita Police Academy in performing HGN tests. Molitor objected to Officer Diaz' testimony regarding the results of the HGN test, asserting that the Kansas Supreme Court had found HGN evidence to be "inadmissible in court for any reason whatsoever." The district court overruled the objection,

finding that even though such evidence would be inadmissible at trial, it could be considered at a suppression hearing in determining whether a law enforcement officer had reasonable suspicion to request a PBT.

After considering the evidence presented at the suppression hearing, the district court denied the motion to suppress, concluding that Officer Diaz had reasonable suspicion to ask Molitor to submit to a PBT. Subsequently, Molitor filed a motion to reconsider. Again, Molitor argued that HGN evidence is not admissible under any circumstances. In denying the motion to reconsider, the district court found that although HGN evidence is not admissible at trial, it is relevant to a motion to suppress "where the defendant says the officer had no reasonable suspicion to request and receive a preliminary breath test."

Ultimately, the parties entered into a stipulation regarding the facts and the case proceeded to a bench trial before a different district judge than the one who had heard the pretrial motions. At trial, Molitor preserved his right to appeal the denial of the motion to suppress. Based on the stipulation, Molitor was found guilty of operating a vehicle with a BAC greater than .08 and of failing to signal when making a turn. Thereafter, Molitor filed a timely appeal.

## ISSUE PRESENTED AND ANALYSIS

On appeal, Molitor contends that the district court abused its discretion by failing to follow binding Kansas Supreme Court precedent holding that evidence regarding HGN is inadmissible. Specifically, Molitor argues that *State v. Witte*, 251 Kan. 313, 836 P.2d 1110 (1992), and *State v. Chastain*, 265 Kan. 16, 22, 960 P.2d 756 (1998), prohibit the introduction of HGN evidence for all purposes—including the determination of reasonable suspicion—unless it meets the *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), foundation requirements for scientific evidence. Thus, the issue presented is whether HGN evidence may be considered as part of the totality of the circumstances in determining if a law enforcement officer has reasonable suspicion to believe a person

has been operating or attempting to operate a vehicle while under the influence of alcohol or drugs.

*Reasonable Suspicion to Request a Preliminary Breath Test (PBT)*

Administration of a PBT is governed by K.S.A. 2010 Supp. 8-1012(b), which states:

"A law enforcement officer may request a person who is operating or attempting to operate a vehicle within this state to submit to a preliminary screening test of the person's breath to determine the alcohol concentration of the person's breath if the officer has *reasonable suspicion* to believe the person has been operating or attempting to operate a vehicle while under the influence of alcohol or drugs or both alcohol and drugs." (Emphasis added.)

"Reasonable suspicion means a particularized and objective basis for suspecting the person stopped is involved in criminal activity." *State v. Thomas*, 291 Kan. 676, Syl. ¶ 9, 246 P.3d 678 (2011). "The determination of a reasonable suspicion is based on the totality of the circumstances and is viewed in terms as understood by those versed in the field of law enforcement." 291 Kan. 676, Syl. ¶ 10. "Reasonable suspicion represents a minimum level of objective justification. It is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence." 291 Kan. 676, Syl. ¶ 11. "Whether reasonable suspicion exists is a question of law. An appellate court uses a mixed question standard of review, determining whether substantial competent evidence supports the district court findings, while the legal conclusion is reviewed de novo." 291 Kan. 676, Syl. ¶ 12.

*Horizontal Gaze Nystagmus (HGN) Test*

In 1992, the Kansas Supreme Court distinguished HGN tests from other field sobriety tests because it is based on scientific principles outside the scope of common knowledge. *State v. Witte*, 251 Kan. at 322. Consequently, the *Witte* court held that before HGN test results may be admitted at trial, the foundational requirements of *Frye* must be met. 251 Kan. at 329-30. In particular, the *Witte* court was concerned about the tendency of jurors to be misled by scientific evidence. 251 Kan. at 323.

Six years later, in *State v. Chastain*, the Kansas Supreme Court found that HGN tests had still "not achieved general acceptance

within the relevant scientific community." 265 Kan. at 22-23. More recently, the Kansas Supreme Court relied on *Witte* and *Chastain* in addressing the scientific reliability of "psychomotor field sobriety tests" purporting to establish a specific BAC. See *State v. Shadden*, 290 Kan. 803, 821-23, 235 P.3d 436 (2010). Although *Witte, Chastain*, and *Shadden* continue to serve as precedential authority in Kansas, none of these cases directly address the issue of whether HGN evidence may be considered prior to trial as part of the totality of the circumstances in determining if a law enforcement officer had reasonable suspicion to request a PBT.

*Use of HGN Evidence in Determining Reasonable Suspicion*

It is important to note that the issue presented in this case is not whether HGN testing has now reached the level of acceptance to satisfy the *Frye* test. Moreover, the issue presented is not whether HGN evidence should be admissible at trial to prove guilt or a specific BAC. Rather, the issue before us is whether HGN evidence can be considered as part of the *totality of the circumstances* in determining whether a law enforcement officer has *reasonable suspicion* to believe the person stopped has been operating or attempting to operate a vehicle while under the influence of alcohol or drugs.

In *Shadden*, the Kansas Supreme Court recognized that

"courts generally agree that there is a dividing line between admitting field sobriety test results as circumstantial evidence of intoxication, which is admissible, and the use of such results to assert or imply a specific level of intoxication, which is not admissible unless an appropriate scientific opinion foundation has been laid." 290 Kan. at 823.

In support of this finding, the Kansas Supreme Court cited several cases from other jurisdictions—including Alaska, Maryland, Missouri, Nebraska, New Hampshire, North Dakota, South Carolina, and Texas—in which it was held that HGN test results are admissible as circumstantial evidence of intoxication but inadmissible to establish a specific BAC. 290 Kan. at 823-24. Accordingly, we find that there is a significant difference between the use of HGN test results as circumstantial evidence of intoxication in determining reasonable suspicion or probable cause prior to trial and

the use of such results to prove guilt or a specific level of intoxication at trial.

Our review of caselaw reveals that while there is still legitimate debate over the issue of whether a law enforcement officer's testimony regarding HGN test results should be admissible at trial to prove guilt or to prove a specific BAC, courts throughout the United States have held that HGN test results may be considered to determine whether probable cause exists to charge a driver with driving while intoxicated. See *United States v. Hernandez-Gomez*, No. 2:07-CR-0277-RLH-GWR, 2008 WL 1837255, *7 (D. Nev. 2008) (unpublished opinion) (citing *United States v. Horn*, 185 F. Supp. 2d 530, 534 [D. Md. 2002]). HGN test results have been found to be properly considered as a factor in determining probable cause in Alabama, Alaska, Arizona, Arkansas, Delaware, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Louisiana, Maine, Mississippi, Missouri, Nebraska, New Hampshire, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, South Carolina, Texas, Utah, West Virginia, and Wyoming. See *Strickland v. City of Dothan, AL*, 399 F. Supp. 2d 1275, 1288 n.29 (M.D. Ala. 2005); *State v. Grier*, 791 P.2d 627, 631 (Alaska App. 1990); *State v. Superior Court*, 149 Ariz. 269, 280, 718 P.2d 171 (1986); *Whitson v. State*, 314 Ark. 458, 465, 863 S.W.2d 794 (1993); *State v. Ruthardt*, 680 A.2d 349, 354 (Del. Super. 1996); *Polizzotto v. State*, 248 Ga. App. 814, 818, 547 S.E.2d 390 (2001); *State v. Ito*, 90 Hawaii 225, 241, 978 P.2d 191 (Hawaii App. 1999); *State v. Garrett*, 119 Idaho 878, 881, 811 P.2d 488 (1991); *People v. Furness*, 172 Ill. App. 3d 845, 849, 526 N.E.2d 947 (1988); *Cooper v. State*, 761 N.E.2d 900, 903 (Ind. App. 2002); *State v. Murphy*, 451 N.W.2d 154, 158 (Iowa 1990); *State v. Armstrong*, 561 So. 2d 883, 887 (La. App. 1990); *State v. Taylor*, 694 A.2d 907, 912 (Me. 1997); *Deloach v. City of Starkville*, 911 So. 2d 1014, 1017 (Miss. App. 2005); *State v. Hall*, 201 S.W.3d 599, 604 (Mo. App. 2006); *State v. Baue*, 258 Neb. 968, 985, 607 N.W.2d 191 (2000); *State v. Cochrane*, 153 N.H. 420, 422, 897 A.2d 952 (2006); *State v. Lasworth*, 131 N.M. 739, 745 n.4, 42 P.3d 844 (Ct. App. 2001); *City of Fargo v. McLaughlin*, 512 N.W.2d 700, 708 (N.D. 1994); *State v. Bresson*, 51 Ohio St. 3d 123, 130, 554 N.E.2d 1330 (1990); *Anderson v. State*, 252 P.3d

211, 212 (Okla. Crim. 2010); *State v. O'Key*, 321 Or. 285, 322-23, 899 P.2d 663 (1995); *State v. Sullivan*, 310 S.C. 311, 315-16, 426 S.E.2d 766 (1993); *Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. 1994), *cert. denied*, 513 U.S. 931 (1994); *Salt Lake City v. Garcia*, 912 P.2d 997, 1000 (Utah App. 1996); *State v. Dilliner*, 212 W. Va. 135, 148, 569 S.E.2d 211 (W. Va. 2002) (Starcher, J., concurring); *Smith v. State*, 11 P.3d 931, 935 (Wyo. 2000). In fact, from our review of caselaw, we can find no authority holding that HGN tests may not be considered for the purposes of determining probable cause in a DUI case.

Because reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence, we find that HGN test results may, under appropriate circumstances, be considered as part of the totality of the circumstances in determining whether a law enforcement officer has reasonable suspicion to request a PBT. We recognize that Kansas law continues to prohibit the introduction of HGN test results at trial without meeting the *Frye* foundation requirements for scientific evidence. We find, however, that testimony from a law enforcement officer trained in administering HGN tests may properly be considered as part of the circumstantial evidence used prior to trial in determining whether the totality of circumstances show that a law enforcement officer had reasonable suspicion to request a PBT.

Here, the City introduced testimony at the suppression hearing that Officer Diaz had received training in the administration of HGN tests. Moreover, there is nothing in the record to indicate that the district court considered the HGN test results in determining Molitor's specific level of intoxication or his guilt at the bench trial. Instead, the record reflects that the HGN evidence was merely one of several factors considered by the district court at the suppression hearing in determining whether—based on the totality of the circumstances—Officer Diaz had reasonable suspicion to request that Molitor submit to a PBT. Therefore, we conclude that the district court did not commit error in denying Molitor's motion to suppress.

*Reasonable Suspicion without HGN Evidence*

Because we have determined that the district court did not commit error in admitting HGN evidence at the suppression hearing, Molitor's statutory and constitutional rights were not violated. Nevertheless, we also find that there is sufficient evidence in the record to support the district court's conclusion that Officer Diaz had reasonable suspicion to believe that Molitor had operated a vehicle while under the influence of alcohol—even without consideration of the HGN evidence.

As indicated above, whether reasonable suspicion exists is a question of law. *Thomas*, 291 Kan. 676, Syl. ¶ 12. And this question must be resolved based on the totality of the circumstances—as viewed in terms as understood by those versed in the field of law enforcement. See 291 Kan. 676, Syl. ¶ 10. "Quantity and quality are considered in the totality of the circumstances—the whole picture that must be taken into account when evaluating whether there is reasonable suspicion." See *State v. Toothman*, 267 Kan. 412, Syl. ¶ 5, 985 P.2d 701 (1999).

Here, a review of the record reveals that Molitor was stopped by Officer Diaz and Officer Vogel at approximately 11:18 p.m. for turning right at an intersection without signaling. Shortly before being stopped by the police, Molitor had left a bar and grill. As Molitor was stopping, one of his tires struck or partially went onto the curb.

Upon approaching Molitor's vehicle, Officer Diaz smelled the very strong odor of alcohol and he also observed that the Molitor's eyes were bloodshot and watery. When Officer Diaz asked if he had been drinking, Molitor admitted that he had consumed two or three beers. Officer Diaz then directed Molitor to step out of the vehicle so that he could perform field sobriety tests. During the walk-and-turn test, Molitor lost his balance during the instructional phase. And he put his foot down once during the one-leg-stand test.

Although no one factor in and of itself established reasonable suspicion, we find that the totality of the circumstances were sufficient to give Officer Diaz reasonable suspicion to believe that

Molitor had been operating a vehicle while under the influence of alcohol—even if the HGN test had not been administered. See *State v. Pollman*, 286 Kan. 881, Syl. ¶ 7, 190 P.3d 234 (2008) (failure to follow officer's directions, smell of alcohol, and admission of drinking provided reasonable suspicion sufficient to justify officer's request for PBT). We note that there is evidence in the record that Molitor was able to speak without slurring his words, produced his identification without difficulty, and had only one clue each on the walk-and-turn test and the one-leg-stand test. But we do not find that these factors substantially dissipated Officer Diaz' reasonable suspicion that Molitor had operated a vehicle under the influence of alcohol.

Accordingly, we find that Officer Diaz was justified in requesting that Molitor submit to a PBT. Because the results of the PBT revealed a BAC over the legal limit, Officer Diaz' request that Molitor submit to an evidentiary breath test was also justified. Even without HGN evidence, the results of the breath tests, together with the factors supporting reasonable suspicion—striking the curb, very strong odor of alcohol, bloodshot and watery eyes, admission to drinking beer, losing balance during instruction phase of walk-and-turn test, and putting foot down on the one-leg-stand test—combined to warrant probable cause for the charges brought against Molitor. Therefore, we conclude that even if the district court had committed error by considering HGN evidence at the suppression hearing, there still would have been reasonable suspicion for the PBT.

*Opinion Testimony under K.S.A. 60-456*

Molitor also contends on appeal that Officer Diaz' testimony regarding the results of the HGN test was improper opinion testimony pursuant to K.S.A. 60-456. Application of K.S.A. 60-456 is reviewed under an abuse of discretion standard. See *State v. Shadden*, 290 Kan. at 819. An abuse of discretion occurs when the action is arbitrary, fanciful, or unreasonable, meaning no reasonable person would have taken the action of the district court. See *State v. Sellers*, 292 Kan. 117, 124, 253 P.3d 20 (2011).

At the suppression hearing, Officer Diaz testified on direct examination that he had successfully completed training at the Wichita Police Academy in performing HGN tests. Although Molitor's attorney cross-examined Officer Diaz at the suppression hearing, he asked no questions regarding the officer's qualifications to perform HGN tests nor did he assert an objection on the ground of improper opinion testimony. Rather, Molitor's attorney argued that HGN test results were "inadmissible in court for any reason whatsoever."

In light of the testimony from Officer Diaz' testimony regarding his successful completion of training to perform HGN tests and Molitor's failure to challenge Officer Diaz' qualifications, we conclude that the district court did not abuse its discretion in considering the HGN test results at the suppression hearing for the limited purpose of determining that Officer Diaz had reasonable suspicion to request that Molitor submit to a PBT.

Affirmed.