NOT DESIGNATED FOR PUBLICATION

No. 121,896

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

KYLE L. HEINEKEN,
*Appellee*.


MEMORANDUM OPINION

Appeal from Clay District Court; WILLIAM M. MALCOLM, magistrate judge. Opinion filed April 3, 2020. Reversed and remanded with directions.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Jeremiah L. Platt*, of Clark & Platt, Chtd., of Manhattan, for appellee.


Before BRUNS, P.J., MALONE and GARDNER, JJ.


PER CURIAM:  In this interlocutory appeal, the State challenges the district court's suppression of the breath alcohol test results following the arrest of Kyle Heineken for suspicion of driving under the influence of alcohol. After being charged, Heineken moved to suppress the breath alcohol test results, claiming that the arresting officer did not give him a reasonable opportunity to obtain additional testing. The district court agreed with Heineken and ordered the suppression of the breath alcohol test results. On appeal, the State contends that the district court erred in suppressing this evidence. Finding no violation of Heineken's right to seek additional testing, we reverse the order of suppression and remand this case to the district court for further proceedings.

1

On the evening of September 29, 2018, Clay County Sheriff's Deputy Keith Myers stopped Heineken's vehicle for speeding. Following a series of field sobriety tests, Deputy Myers arrested Heineken for suspicion of driving under the influence of alcohol. At the Clay County Law Enforcement Center, Deputy Myers presented Heineken with a DC-70, implied consent advisory form, and read it aloud to him. In so doing, Deputy Myers informed Heineken that he had the right to seek additional testing after he completed the official testing.

Heineken consented to a breath alcohol test, which revealed that his blood alcohol level exceeded the legal limit for driving. However, noticing chewing tobacco flakes on the mouthpiece of the testing machine following the first test, Deputy Myers asked Heineken if he wanted to take a second breath test. Again, Heineken consented. During the second 20-minute deprivation period before the second breath alcohol test, Deputy Myers explained to Heineken that he thought the first test might be invalid because of the chewing tobacco in his mouth.

While they continued to wait, Heineken asked the officer about the possibility of obtaining an additional blood test. In particular, the custodial video recorded the following conversation between Deputy Myers and Heineken:

> "Deputy Myers: [If your attorney] says yeah, go ahead [with additional testing], you're going to have to secure testing on your own. That means you'll have to go somewhere and take the test.

> "Heineken: That'll be fine.

> "Deputy Myers: I mean, there's no place around here that you can take an actual breath test. The only option . . .

"Heineken:  What about blood?

"Deputy Myers:  The only option would be to go the hospital and have blood drawn. That's something you would have to do on your own.

"Heineken:  Under your surveillance?

"Deputy Myers:  No . . . at this point, any additional testing that you do is on you, pretty much. So, that means, if you want to go have blood drawn and use that as your defense later down the road, that's . . . totally up to you because my basis for the arrest tonight was based on what I observed out in the field."

Then, Deputy Myers handed Heineken his phone. Although it appears from the video that Heineken texted someone and talked to his daughter about a ride home, there is no suggestion that he called a physician, hospital, or attorney. Afterward, Heineken took the second breath test without requesting additional testing. The second test also revealed a blood alcohol level over the legal limit for driving. Before turning Heineken over to the jailer for processing, Deputy Myers asked him whether he had any questions. Heineken responded, "No" and did not request additional testing.

A few minutes later, after informing Heineken about the amount of his bond, Deputy Myers, again, asked Heineken if he had any questions. As he had done before, Heineken indicated that he did not have any questions. Moreover, he did not request additional testing. Soon after—about two and a half hours after the initial stop—Heineken bonded out of jail. There is no indication in the record that Heineken went to a hospital or physician's office to obtain additional testing on his own after being released.

On October 18, 2018, the State charged Heineken with driving under the influence of alcohol and speeding. Prior to trial, Heineken moved to suppress the breath alcohol tests, arguing that the Deputy Myers had denied him a reasonable opportunity to obtain additional testing. Although a district magistrate judge initially denied Heineken's motion

3

to suppress, he later reconsidered and entered an order suppressing the breath alcohol test results. Thereafter, the State timely filed this interlocutory appeal under K.S.A. 22-3603.

ANALYSIS

The sole issue presented in this interlocutory appeal is whether the district court erred in suppressing the breath alcohol test results. The State contends that there was no violation of K.S.A. 8-1004, which provides a person suspected of driving under the influence of alcohol "a reasonable opportunity to have an additional test by a physician of the person's own choosing." Specifically, the State argues that Deputy Myers did not refuse to permit Heineken from seeking additional testing. In response, Heineken argues that the district court was correct in finding that he was not given a reasonable opportunity to seek additional testing.

Our review of a district court's decision on a motion to suppress evidence is bifurcated. We review the factual underpinnings of the decision to determine whether they are supported by substantial competent evidence while our review of the ultimate legal conclusion drawn from those facts is de novo. *State v. Lowery*, 308 Kan. 359, 364, 420 P.3d 456 (2018). Substantial competent evidence is evidence that a reasonable person could accept as adequate to support a conclusion. In determining whether the district court's findings of fact are supported by substantial competent evidence, we do not reweigh the evidence, assess the credibility of witnesses, or resolve evidentiary conflicts. *State v. Boggess*, 308 Kan. 821, 825, 425 P.3d 324 (2018).

Under K.S.A. 8-1004, if a law enforcement officer "refuses to permit . . . additional testing," the results of any properly administered tests given by the officer are not to be considered to be "competent evidence." The purpose of the rule is to allow a person suspected of driving under the influence the ability to procure probative evidence and to prepare a defense. Even so, what is considered to be a "reasonable opportunity to

4

have an additional test" performed depends on the circumstances of each case. *State v. George*, 12 Kan. App. 2d 649, Syl. ¶¶ 1, 2, 4, 754 P.2d 460 (1988).

A review of the record on appeal reveals that, although Heineken asked about the possibility of additional testing, he did not request to call a physician or hospital to arrange for such testing. Likewise, Heineken did not request to be taken to a physician's office or hospital. The record also reveals that Deputy Myers accurately told Heineken that any additional testing would be "on your own" and not part of the testing being performed at the law enforcement center. Thus, we find no violation of K.S.A. 8-1004 under the circumstances presented in this case.

Certainly, a law enforcement officer may not unreasonably interfere with a person suspected of driving under the influence's attempts to secure additional testing. *George*, 12 Kan. App. 2d at 655. Furthermore, the State's test results must be suppressed when the suspect has actually made a request for additional testing and an officer refuses to permit such additional testing. *City of Dodge City v. Ibarra*, 35 Kan. App. 2d 643, 648, 133 P.3d 159 (2006). Even so, a suspect's invocation of his or her statutory right to additional testing under K.S.A. 8-1004 must be unambiguous and unequivocal. See *Mitchell v. Kansas Department of Revenue*, 32 Kan. App. 2d 298, 299-302, 81 P.3d 1258 (2004); *State v. Eichem*, No. 91,903, 2005 WL 2949404, at *6 (Kan. App. 2005) (unpublished opinion).

In *Eichem*, a law enforcement officer arrested the defendant for DUI. According to the officer, the defendant stated that he would prefer a blood test but was informed that only a breath test was being offered. At his suppression hearing, the defendant testified that he requested a blood test because he did not trust the breath test machines. In affirming the district court's refusal to suppress the results of the breath test, the *Eichem* panel held that the officer did not refuse to permit additional testing. Instead, the panel found that "[a]t most, the defendant made an ambiguous statement concerning his desire

5

to obtain a blood test, which the deputy was under no obligation to clarify." 2005 WL 2949404, at *6.

Similarly, we find Heineken's questions and statements to Deputy Myers to be at most ambiguous and far from an unequivocal request for additional testing. Even if Heineken's questions and statements could be construed as a request for additional testing, we find nothing in the record to suggest that Deputy Myers unreasonably interfered with any attempt by Heineken to secure additional testing. Instead, a review of the record shows that Deputy Myers honestly tried to answer Heineken's questions to the best of his ability and gave him several opportunities to ask additional questions.

In *State v. Chastain*, 265 Kan. 16, 960 P.2d 756 (1998), a defendant moved to suppress the results of his breath test because the arresting officer had told him an additional blood test would likely show a higher alcohol level. In rejecting this argument, our Supreme Court held that "[a]s a matter of law, the statement . . . to the defendant that a blood test would show higher, without any further evidence of unreasonable interference or coercion, does not establish the defendant was deprived of his right for further testing under the provisions of K.S.A. 8-1004." 265 Kan. at 22. Here, there is even less evidence that Deputy Myers somehow pressured or otherwise interfered with Heineken's statutory right to obtain additional testing.

Instead, the record on appeal shows that Deputy Myers advised Heineken of his right to additional testing and answered his questions in a reasonable manner. We also find no evidence in the record to suggest that Heineken sought—or attempted to seek—additional testing by a physician or hospital even after he bonded out of custody two-and-a-half hours after the initial traffic stop. As such, we find that Deputy Myers did not deny Heineken "a reasonable opportunity to have an additional test by a physician of [his] own choosing" as provided by K.S.A. 8-1004. For these reasons, we reverse the district court's

suppression of Heineken's breath alcohol testing and remand this case to the district court for further proceedings.

Reversed and remanded with directions.