NOT DESIGNATED FOR PUBLICATION

No. 124,801

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RAMON VAZQUEZ-CARMONA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Modified opinion filed June 2, 2023. Opinion filed on remand June 14, 2024. Affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Garett C. Relph*, deputy district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., GREEN and WARNER, JJ.

PER CURIAM: On February 21, 2024, our Supreme Court granted Ramon Vazquez-Carmona's petition for review. The Supreme Court summarily vacated the Court of Appeals' opinion and remanded this appeal to the Court of Appeals to obtain the exhibits Vazquez-Carmona properly added to the record on appeal and then reconsider the appeal.

In our original and modified opinions, Vazquez-Carmona appealed his involuntary manslaughter conviction while driving under the influence. Vazquez-Carmona contended

1

that insufficient evidence supported his conviction because no "direct evidence" proved that his conduct killed the victim, Cynthia Goulding. He asked us to reverse his conviction, which was determined by a trial to the district court, commonly referred to as a bench trial. Nevertheless, we determined that Vazquez-Carmona's sufficiency of the evidence arguments contained grave flaws. For instance, the evidence showed that Vazquez-Carmona, while intoxicated, crashed his silver truck into Steve Pulliam's black van. And this collision forced Pulliam's black van 25 feet further down the street to where Goulding had parked her white van while in the process of rendering aid to Pulliam. Goulding's lifeless body was found immediately after the collision next to her white van. The coroner's report stated that Goulding's death was due to multiple blunt force injuries to her head and upper body.

Now that we have obtained the additional exhibits that Vazquez-Carmona properly added to the record, we will reconsider whether the district court erred when it found Vazquez-Carmona guilty beyond a reasonable doubt of involuntary manslaughter while driving under the influence.

FACTS

This case involves four vehicles and two collisions on 59th Street in Kansas City, Kansas. The first vehicle—and least significant car for purposes of this case—was a white car. The people in the white car fled the scene after striking a second vehicle. The second vehicle was a black van driven by Pulliam. Next, the third vehicle was a white van driven by Goulding. Lastly, the fourth vehicle was a silver truck driven by Vazquez-Carmona.

Around 3 a.m. on March 14, 2021, Pulliam turned right—north—onto 59th Street in his black van. It is undisputed that the street from which Pulliam turned right onto 59th Street was at the crest of a hill. This made it difficult for oncoming traffic to see when

2

people turned in this area. Although Pulliam successfully turned right onto 59th Street, he wanted to make an immediate left turn onto another street. As he turned left, a white car came over the hill and crashed into the right side of his van. When this white car struck Pulliam's black van, it "tore the front wheel off [of his] car and flipped [him] . . . kitty-corner across the intersection." This left Pulliam trapped in his disabled van, which was still in the northbound lane of 59th Street but facing east; the crash also left the front of Pulliam's van in the yard of a private residence along 59th Street.

The white car ultimately stopped about "two and-a-half blocks" from where it struck Pulliam's black van. Although Pulliam was trapped in his disabled van, from his location, he saw people get out of the white car and run away.

About a minute or two after this incident, Goulding parked her white van in front of Pulliam's disabled black van, which was still blocking the northbound lane of 59th Street. Like Pulliam, Goulding had been traveling north on 59th Street. Once parked, Goulding walked to Pulliam's car and asked him if he was okay. She explained to Pulliam that she was going to call the police. She also told Pulliam that she would wait until the police arrived "so she could tell [them] what [had] happened." Later, Pulliam would explain that during his short conversation with Goulding, Goulding seemed normal; that is, she was walking normally and had no problems speaking to him. After his short conversation with Goulding, Pulliam saw her walk east towards a grassy area. But after that, Pulliam never saw Goulding again.

A minute or so after Goulding walked in an easterly direction, Vazquez-Carmona "broad sided" the passenger side of Pulliam's black van with his silver truck as he was driving north on 59th Street. The force of this collision pushed Pulliam's black van about 25 feet further north on 59th Street.

Approximately a couple of minutes after this second crash, emergency services arrived. When emergency services arrived, Goulding was already dead. Someone had placed a blanket over the top of her body, and there was a beer can on top of the blanket. Her body "was laying in the street against the curb on the east side of the road," which was by her "white van next to a mailbox . . . ."

While at the collisions' site, Officer Kenneth Garrett helped investigate the collisions. He spoke to Vazquez-Carmona, who had remained in his silver truck after colliding with Pulliam's black van. Although Officer Garrett had some problems talking to Vazquez-Carmona because Vazquez-Carmona's primary language was Spanish, he believed that Vazquez-Carmona was under the influence of alcohol during the collision for the following reasons: (1) because Vazquez-Carmona smelled strongly of alcohol, (2) because Vazquez-Carmona's eyes were bloodshot and watery, and (3) because Vazquez-Carmona was uncoordinated. Based on this belief, he asked Vazquez-Carmona to perform the one-leg stand test, which he failed. Afterwards, law enforcement arrested Vazquez-Carmona for driving under the influence.

Although Vazquez-Carmona initially refused law enforcement's requests for breath or blood alcohol testing, he eventually provided a blood sample. Testing showed that Vazquez-Carmona's blood alcohol content was 0.238 grams per 100 milliliters of blood—over three times the legal limit to drive. Also, the coroner's autopsy report stated that Goulding died from multiple blunt force injuries. As a result, the State charged Vazquez-Carmona with involuntary manslaughter while driving under the influence, a severity level 4 person felony in violation of K.S.A. 2020 Supp. 21-5405(a)(3). In addition, because Vazquez-Carmona did not have a driver's license, the State charged him with driving without a license, a class B misdemeanor in violation of K.S.A. 2020 Supp. 8-235(a).

4

Although Vazquez-Carmona's bench trial technically included the State's driving without a license charge, at trial, Vazquez-Carmona conceded that he was driving without a license. He also conceded that he had been driving over the legal alcohol limit. So, in effect, Vazquez-Carmona's bench trial involved one determinative issue—whether his conduct caused Goulding's death.

In addition to presenting evidence that Vazquez-Carmona's blood alcohol level was 0.238 on the morning of March 14, 2021, the State's trial evidence against Vazquez-Carmona relied heavily on the following: (1) Pulliam's testimony about his experiences while sustaining the two collisions, (2) Officer Garrett's testimony about investigating the two collisions, and (3) Detective Marlin Sluder's testimony about reconstructing the collisions. Detective Sluder, who was a certified accident reconstructionist, testified that based on his experience, he believed the following about Vazquez-Carmona's collision with Pulliam: (1) that rain played no role in the crash, (2) that the location where the collision occurred had good visibility, (3) that Vazquez-Carmona's silver truck was going "well over" the speed limit, and (4) that Vazquez-Carmona engaged in no evasive maneuvers with his silver truck before the collision, like breaking or steering in a different direction, to avoid striking Pulliam's black van. Additionally, although the coroner did not testify based on the parties' stipulation and agreement, the State admitted the coroner's autopsy report into evidence without objection. The autopsy report stated that Goulding died from multiple blunt force injuries to her body.

In his defense, Vazquez-Carmona called two police officers who responded to the collisions. Both testified that during their response, they saw a beer can on top of the blanket that somebody had placed over Goulding's body. When questioned further, neither knew why there was a beer can on top of the blanket. Vazquez-Carmona also asked the crime scene photographer about the accuracy of his photographs, suggesting that they were inaccurate because they did not match the State's exhibit diagramming the collisions.

Furthermore, Vazquez-Carmona testified in his own behalf. During his testimony, Vazquez-Carmona admitted that the collision occurred after he left a bar, where he had consumed six to eight beers. But he testified that the road conditions were bad and that it was raining and "it was very dark" during the early morning hours of March 14, 2021. He denied speeding, explaining that he usually drove about five miles under the speed limit. He suggested that he could not have avoided the collision with Pulliam's black van because he could not see it until immediately after he crested the 59th Street hill. Also, although Vazquez-Carmona's responses about exactly when he first saw Pulliam's black van varied, when Vazquez-Carmona's trial attorney first asked Vazquez-Carmona when he realized that Pulliam's black van was in the roadway, Vazquez-Carmona gave the following answer:

> "So I was driving, *I was going up the hill and then down it*, but it was dark and it was raining and there really wasn't any visibility because it was so dark. And when I arrived, it was difficult because *she was already in f[r]ont of me* and I tried to turn, but there wasn't enough—there wasn't an opportunity to do it." (Emphases added.)

During closing arguments, the State emphasized the evidence that Vazquez-Carmona's blood alcohol content was over three times the legal limit to drive. It argued that Vazquez-Carmona's decision to drive while over the legal limit caused him to crash into Pulliam's black van, which then caused Goulding's death.

Meanwhile, Vazquez-Carmona's closing arguments questioned the quality of the legal work documenting what happened when he crashed his silver truck into Pulliam's black van. He suggested that Goulding may have been acting recklessly because "the street is a dangerous place to be." He stated that although he was "not insinuating anything," in addition to the beer can found on the blanket that was placed on top of Goulding's body, the autopsy report stated that Goulding had methamphetamine in her blood. He implied that Goulding may have recklessly caused her own death because she

6

had previously used methamphetamine. Finally, although he conceded that he was driving under the influence, he argued that his alcohol use did not cause the crash. He contended that even a sober person would have collided into Pulliam's black van given the rain, the dark conditions, and the fact that Pulliam's black van was disabled on a hill.

In its rebuttal, the State took issue with Vazquez-Carmona's version of the evidence. It pointed to Detective Sluder's testimony that Vazquez-Carmona caused the second collision. Also, it asserted that Vazquez-Carmona's argument that Goulding caused her own death by acting recklessly was baseless, illuminating three reasons: (1) that Goulding, unlike Vazquez-Carmona, was able to drive around Pulliam's disabled black van, parking her white van in front of it; (2) that Goulding's checking on a car crash victim's well-being should not be considered a reckless act; and (3) that the coroner listed Goulding's cause of death as "multiple blunt force injuries," which had nothing to do with her previous methamphetamine use.

The district court judge found Vazquez-Carmona guilty of involuntary manslaughter while driving under the influence and driving without a license. In doing so, the district court gave a detailed explanation why Vazquez-Carmona was guilty of involuntary manslaughter while driving under the influence. The judge found from the testimony of Detective Sluder, from the photos taken by the crime scene photographer, and from the law enforcement camera footage, that this evidence showed the following: that weather, lighting, and the collisions' locations were not a factor in causing the crash. The judge explained that based on this evidence, it was apparent that the road was merely damp and that the crash occurred further down the hill on 59th Street—not at the hill's crest where the visibility issues existed. Next, the district court judge found that Vazquez-Carmona's own testimony and his blood alcohol content results showed that he was driving under the influence. The judge further explained that Goulding's ability to avoid and then park her white van in front of Pulliam's disabled black van was evidence that a

sober person could have avoided the collision. Thus, the district court judge concluded that a sober person could have avoided hitting Pulliam's black van.

As for Vazquez-Carmona's argument that he was not guilty because Goulding recklessly caused her own death, the district court judge explained that he had reviewed several legal opinions about whether the alleged victim's negligent behavior was a defense to an involuntary manslaughter while driving under the influence charge. Those opinions included *State v. Chastain*, 265 Kan. 16, 960 P.2d 756 (1998); *State v. Bale*, 39 Kan. App. 2d 655, 182 P.3d 1280 (2008); and *State v. Collins*, 36 Kan. App. 2d 367, 138 P.3d 793 (2006). In considering those opinions, the district court judge concluded the following: (1) that contributory negligence was not a valid defense to Vazquez-Carmona's charge but (2) that Goulding's own conduct was a substantial factor that he could consider in her cause of death. He explained that those opinions held that the defendant's conduct must be the actual cause of the victim's death. Nevertheless, the district court judge found that Vazquez-Carmona's conduct was the sole cause of Goulding's death when he focused on the following evidence: (1) that Goulding was able to avoid Pulliam's disabled black van, parking her white van in front of it; (2) that Goulding appeared normal during her short interaction with Pulliam; and (3) that the coroner reported multiple blunt force injuries as the sole cause of Goulding's death.

Afterwards, for his involuntary manslaughter conviction, the district court sentenced Vazquez-Carmona to 43 months' imprisonment followed by 36 months' postrelease supervision. For his misdemeanor driving without a license conviction, the district court imposed a 2-month jail sentence, which it ran concurrent with Vazquez-Carmona's 43-month involuntary manslaughter sentence.

Vazquez-Carmona timely appeals.

8

ANALYSIS

*Does sufficient evidence support Vazquez-Carmona's involuntary manslaughter while driving under the influence conviction?*

On appeal, Vazquez-Carmona argues (1) that although he struck Pulliam's black van with his silver truck and (2) that although his blood alcohol content was over the legal limit, "the State did not put on evidence that [he] killed [Goulding] . . . ." Vazquez-Carmona recognizes that at his bench trial, his attorney and the State's attorney assumed that Goulding died after his silver truck collided with Pulliam's black van. Nevertheless, he argues that the district court wrongly convicted him of involuntary manslaughter while driving under the influence because "[t]here was no direct evidence" proving that his conduct, that is, crashing his silver truck into Pulliam's black van, caused Goulding's death. In support of this argument, he asserts (1) that the State presented conflicting evidence and (2) that many of the district court judge's findings were unsupported. He contends that "[a] reasonable inference to draw from State's Exhibits 9 and 17 and the testimony of the first responding officer is that Ms. Goulding hit her head on the street or curb next to her van." So, Vazquez-Carmona asks us to reverse his involuntary manslaughter while driving under the influence conviction under K.S.A. 2020 Supp. 21-5405(a)(3) because the State failed to present specific evidence that Goulding's death was directly caused when his silver truck collided into Pulliam's black van.

The State responds that we should affirm the district court's guilty verdict because the "uncontroverted evidence" proves that Goulding was alive until Vazquez-Carmona crashed his silver truck into Pulliam's black van. The State points to Detective Sluder's trial testimony that when Vazquez-Carmona crashed his silver truck into Pulliam's black van, the force of the crash pushed Pulliam's van 25 feet further north on 59th Street. Also, the State relies on the undisputed evidence that a minute or so before Vazquez-Carmona crashed his silver truck into Pulliam's black van, Goulding was alive, but right after

9

Vazquez-Carmona crashed his silver truck into Pulliam's black van, Goulding was dead from multiple blunt force injuries.

Our standard of review when considering sufficiency of the evidence challenges is well-known:

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. This court has also recognized that there is no distinction between direct and circumstantial evidence in terms of probative value. "A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference." [Citations omitted.]'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

K.S.A. 21-5405(a)(3) states that "[i]nvoluntary manslaughter is the killing of a human being committed:  . . . in the commission of, or attempt to commit, or flight from an act described in K.S.A. 8-1567, and amendments thereto." K.S.A. 8-1567 is the statute criminalizing driving under the influence. And K.S.A. 8-1567(a)(1) specifically criminalizes driving with a blood alcohol content that is 0.08 or more.

Here, although Vazquez-Carmona makes several arguments why insufficient evidence supports his involuntary manslaughter while driving under the influence conviction under K.S.A. 21-5405(a)(3), his arguments run counter to reason.

First, Vazquez-Carmona argues that because "[t]he doctor who did the autopsy did not testify, nor did any other medical professional, so there was no evidence about how Ms. Goulding could have received the fatal injuries documented in the autopsy, and no

10

evidence about when and how she received the lacerations, etc. noted in the autopsy report." Thus, he contends that when the district court judge found him guilty, the district court relied on the parties' unsupported statements that Goulding died of multiple blunt force injuries from being struck by Pulliam's black van. But as previously discussed, at trial, the parties stipulated and agreed to admit the coroner's autopsy report into evidence without requiring testimony from the coroner to introduce the report into evidence. Indeed, the parties stipulated for the admittance of the autopsy report as follows:

> "MS. WITTMAN:  Judge, I believe all exhibits are in except 15, and that is the certified report of death from the corner. It was filed with the court in 2021 MV 142. It's my understanding, by stipulation, this will come in without any further testimony.
> "THE COURT:  We did discuss that at the hearing last—not last week or before, and at that time there was a stipulation. Mr. Davis; is that correct?
> "MR. DAVIS:  That is correct, Your Honor.
> "THE COURT:  So no objection for the stipulation to Exhibit 15?
> "MR. DAVIS:  That's correct. Your Honor.
> "THE COURT:  Thank you. It is admitted."

Also, Vazquez-Carmona has never disputed the coroner's finding that Goulding died of multiple blunt force injuries. So, to the extent that Vazquez-Carmona complains that no evidence showed how Goulding received her fatal injuries because the coroner never testified regarding them, Vazquez-Carmona's complaints are baseless. Besides, his complaints are disingenuous, to say the least, because the parties agreed to admit the autopsy report into evidence without requiring testimony from the coroner to introduce the report into evidence. So, when considering the evidence in the light most favorable to the State, a rational fact-finder could have concluded that Goulding died of multiple blunt force injuries by relying on the coroner's autopsy report, confirming these blunt force injuries to her body.

11

Second, Vazquez-Carmona questions how his conduct could have resulted in Goulding's death because Detective Sluder testified that Goulding's white van was not involved in either the first or second collision. Sluder's exact testimony was that two crashes occurred and Goulding's van "was not involved in either of the crashes." He never testified that the second crash could not have caused Goulding's death. Also, Sluder testified that the force of Vazquez-Carmona's silver truck colliding into Pulliam's black van pushed Pulliam's black van 25 feet north on the road. While testifying about this second crash, the State admitted exhibit 8 into evidence, which Sluder stated was an accurate description of the collision location. Exhibit 8 has now been properly added to the appellate record. Nevertheless, exhibit 8, a photograph, clearly shows that Pulliam's black van was very near Goulding's white van after Vazquez-Carmona's silver truck had crashed into Pulliam's black van. Also, it seems that there is debris directly behind Goulding's white van. Hence, in the light most favorable to the State, there was evidence that the powerful force of Vazquez-Carmona's silver truck colliding into Pulliam's black van injured Goulding, which then caused her death.

Third, most of Vazquez-Carmona's arguments concern the State not presenting more eyewitness evidence of Goulding's death. Vazquez-Carmona stresses that Pulliam did not see Goulding after she walked eastward towards the grassy area. He complains that there was no evidence how Goulding looked "when officers found her, or how she got blunt force injuries." Based on this, he concludes that the State presented no "direct evidence" of Goulding's death. According to Vazquez-Carmona, this means that insufficient evidence supported his involuntary manslaughter conviction while driving under the influence.

As explained when outlining our standard of review, however, a fact-finder may find a defendant guilty of even the most serious crime based on circumstantial evidence alone. As we stated earlier, our standard of appellate review is well-established. The appellate court examines all the evidence in a light most favorable to the prevailing

12

party—the State—to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Because an appellate court does not reweigh evidence, resolve evidentiary conflicts, or make credibility determinations, a reviewing court need only look at the evidence in favor of the verdict to determine whether the essential elements of a charge are sustained. *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022).

Thus, the State was never required to present direct evidence of the exact moment of Goulding's death, her appearance following her death, or her exact location following her death to prove Vazquez-Carmona's guilt. If other evidence established that Vazquez-Carmona's conduct caused Goulding's death beyond a reasonable doubt, then the district court could rely on that evidence to convict Vazquez-Carmona of involuntary manslaughter while driving under the influence.

Next, it is readily apparent that the State presented sufficient evidence of Goulding's cause of death. This conclusion is further supported by *Chastain*. There our Supreme Court held the following: "[A] jury could acquit [the defendant] if it found that the victim's conduct was the sole cause of the death and that the defendant's drinking had nothing to do with it." 265 Kan. at 24. Conversely, based on the *Chastain* holding, a jury may convict a defendant when the defendant's conduct is the sole cause of the victim's death and the defendant's drinking had something to do with the victim's death. When applying these principles to the evidence in this case, it shows that Vazquez-Carmona's conduct was the sole cause of Goulding's death and that his intoxication had something to do with Goulding's death.

In summary, the coroner found that Goulding died from multiple blunt force injuries. Pulliam testified that Goulding was alive when she started walking eastward towards the grassy area after checking on his well-being. Pulliam further testified that Vazquez-Carmona crashed his truck into Pulliam's van less than a minute or so after

13

Pulliam had finished talking with Goulding. It is undisputed that Goulding's death occurred immediately after Vazquez-Carmona crashed his silver truck into Pulliam's black van. A police officer that Vazquez-Carmona called to testify explained that Goulding's body was "laying in the street against the curb on the east side of the road," which was by her "white van next to a mailbox . . . ." So, although Vazquez-Carmona argues that a reasonable fact-finder may have found that Goulding died by hitting her head on the curb, this suggestion is inconsistent with the evidence. Simply put, dying from a head injury is different from dying from multiple blunt force injuries.

Also, the district court judge found that Vazquez-Carmona's blood alcohol content showed that he was driving under the influence. Indeed, the district court judge further explained that Goulding's ability to avoid and then park her white van in front of Pulliam's disabled black van was evidence that a sober person could have avoided the collision with Pulliam's black van. So, Vazquez-Carmona's intoxication had something to do with Goulding's death.

Thus, Vazquez-Carmona's conduct was the sole cause of Goulding's death because her death would not have occurred *but for* Vazquez-Carmona's conduct. Given the evidence before the district court, the district court judge's finding that Vazquez-Carmona's conduct caused Goulding's death was reasonable beyond a doubt. Then, viewed in the light most favorable to the State, a rational fact-finder could have found Vazquez-Carmona guilty beyond a reasonable doubt of involuntary manslaughter while driving under the influence. As a result, we affirm Vazquez-Carmona's conviction.

Affirmed.