No. 83,433

STATE OF KANSAS, *Appellant*, v. GREGORY P. ANDERSON, *Appellee*.

(12 P.3d 883)

Opinion filed October 27, 2000.

*Chris E. Biggs*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellant.

*Roger D. Struble*, of Blackwell, Blackwell & Struble, Chtd., of Salina, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J: A motorist was killed in a collision with an officer who was pursuing a speeding motorcyclist. The State appeals the district court's dismissal of the charge of involuntary manslaughter filed against the speeding defendant. In granting the defendant's motion to dismiss the complaint, the district judge determined the speeding defendant could not have anticipated the officer would run a stop sign while pursuing the defendant and the death of the victim was too remote in time and location for the defendant to be criminally responsible.

On June 19, 1998, Rodney Osland, a uniformed Kansas Highway Patrol trooper, driving a marked highway patrol vehicle, was traveling west on Interstate 70 (I-70) in Dickinson County. Osland clocked a motorcycle traveling east on I-70 at 97 mph. Without activating his emergency lights and siren, Osland made a U-turn through the highway median and pursued the motorcycle. There were no other vehicles on the road between the patrol car and the motorcycle. Traveling 120 mph, it took Osland 1 to 1.5 miles to catch up to the motorcyclist. As Osland's vehicle approached the

motorcycle, the motorcyclist accelerated at an extreme rate. The motorcycle swerved onto the inside shoulder of the highway to pass traffic. Osland activated his emergency lights but not his siren. Once the motorcyclist passed the traffic, he swerved into the driving lanes of the Interstate and drove down the centerline, passing vehicles as he traveled.

After Osland cleared the traffic, he again accelerated his patrol car to 120 mph in pursuit of the motorcyclist. Osland lost sight of the motorcycle briefly as he approached Exit 290. The officer observed the motorcycle on the Milford Lake Road overpass at Exit 290. Osland activated his siren as he exited the highway to pursue the motorcyclist. Milford Lake Road is a hilly two-lane road with no shoulders.

The speed limit on Milford Lake Road is 55 mph just off the I-70 exit, 40 mph along a residential area, and 55 mph after the residential stretch. The motorcyclist continued at an extremely high rate of speed through the residential area. Milford Lake Road intersects with Kansas Highway 18 (K-18) 2.3 miles from I-70. Milford Lake Road traffic is stopped by a stop sign at the intersection. Osland had lost sight of the motorcycle after the motorcyclist cleared the first hill on Milford Lake Road.

As Osland approached the K-18 intersection, searching for the motorcycle, he slowed his vehicle, looked both ways prior to entering the intersection, then proceeded through the intersection without stopping. The officer's vehicle struck the driver's side of a westbound vehicle that had entered the intersection. The driver of the car, Mary Jett, died at the scene of the accident.

The motorcyclist was apprehended a short distance from the accident by a Geary County Sheriff's officer who had responded to radio traffic of Osland's pursuit. The motorcyclist, Gregory Anderson, stated to the arresting officer that he was unaware that Osland was pursuing him. Anderson did not appear to be under the influence of intoxicants, and a blood test for alcohol was negative.

Osland and Anderson were charged separately with Jett's death. Osland pled guilty to vehicular homicide, K.S.A. 21-3405, for his failure to comply with K.S.A. 8-1506, which provides that the driver

of an authorized emergency vehicle may proceed past a red or stop signal or stop sign when in pursuit of a violator of the law, but only after slowing down as may be necessary for safe operation.

Anderson was initially charged with unintentional reckless second-degree murder. After the preliminary examination, the magistrate bound Anderson over on the lesser offense of involuntary manslaughter, K.S.A. 21-3404. The State amended the complaint to charge involuntary manslaughter. Anderson filed a motion to dismiss the complaint asserting that, as a matter of law, his actions were not the cause of Jett's death. Anderson argued he was not criminally responsible because Osland had illegally caused Jett's death. After hearing arguments on the motion to dismiss, the district judge found the defendant could not foresee the trooper would run a red light when pursuing the defendant, and under the circumstances, the death was too remote in time and location for the defendant to be responsible and dismissed the charges. The State appeals.

## APPELLATE REVIEW

When the State appeals the dismissal of a complaint, an appellate court's review of an order discharging the defendant for lack of probable cause is de novo. *State v. Stephens*, 263 Kan. 658, 661, 953 P.2d 1373 (1998). This court must view the evidence as would a detached magistrate at a preliminary hearing. The issue is sufficiency of the evidence.

To determine whether there is sufficient evidence to cause a person of ordinary prudence and caution to entertain a reasonable belief of the accused's guilt, the court must draw inferences favorable to the prosecution. Moreover, the evidence needs only to establish probable cause, not guilt beyond a reasonable doubt. The court's role is not to determine the wisdom of the decision to file charges or to determine whether the possibility of a conviction is likely or remote. See *State v. Powell*, 266 Kan. 282, 283, 971 P.2d 340 (1998).

## DISMISSAL OF INVOLUNTARY MANSLAUGHTER

In concluding that Anderson's actions were too remote in time and location to be the proximate cause of Jett's death, the district judge disregarded the facts and surmised:

"[H]ow long is a defendant responsible for the actions of the pursuing officer? Let's say for argument, since [the officer] never saw [Anderson] again, if Mr. Anderson was sitting at the Burger King having a burger at the time, uh, that this [accident] happened. How long . . . if once an officer tries to arrest someone, is it before the liability stops? Can Mr. Anderson foresee that the officer would run this light? And, I guess, basically, if he'd been hot on his tail, I could see this. But, . . . you need, [as a] necessary element of this charge, manslaughter, some proximity— some proximate cause.

"And the Court finds that [Jett's death] is too remote in time and location, . . . to show that the defendant had any cause in the death of . . . Mrs. Jett. Therefore, the Court is going to dismiss counts — all counts but the speeding and reckless driving."

The remaining counts were dismissed by the State to facilitate this appeal.

Involuntary manslaughter, as it applies to Anderson, is the unintentional killing of a human being committed in the commission of, or attempt to commit, or flight from any misdemeanor [speeding] that is enacted for the protection of human life or safety. See K.S.A. 21-3404(b). K.S.A. 21-3404 requires that the conduct of the defendant cause the death of the victim. *State v. Chastain*, 265 Kan. 16, 25, 960 P.2d 756 (1998).

The State asserts that Anderson's extreme speed and reckless driving were the proximate causes of the death of Jett, a member of a class of persons (motorists) likely to be harmed by Anderson's reckless driving and extreme speed. Anderson argues that Officer Osland's entering the intersection in an unsafe manner was an intervening unforeseeable criminal act that extinguished his criminal responsibility for the death of Jett.

## HOT PURSUIT

The responsibility of an officer pursuing a fleeing motorist and why officers are allowed to pursue individuals who attempt to elude capture are discussed in *Thornton v. Shore*, 233 Kan. 737, 666 P.2d 655 (1983), a wrongful death action brought against a police officer who was involved in an automobile chase in which the automobile being pursued was involved in an accident which resulted in two deaths. The Douglas County District Court entered summary judgment in favor of the defendant police officer. The plaintiff ap-

pealed. The *Thornton* court held that (1) the officer was operating his authorized emergency vehicle in full compliance with requirements of emergency vehicle statute, K.S.A. 8-1506, and was thus entitled to privileges and immunities granted by such statute, and (2) the officer, whose only involvement in the accident was pursuit of a law violator, breached no duty owed to those killed. 233 Kan. at 737, Syl. ¶ 10.

In reaching this conclusion, the *Thornton* court noted first that a police officer had a duty to apprehend and arrest law violators. The court then observed that the privileges and immunities granted to police officers under K.S.A. 8-1506 would be hollow if the test of due care (or due regard as used in the statute) were extended to the acts of the fleeing motorist the officer was attempting to apprehend. The court further noted that the net effect of such an extension would make the officer the insurer of the fleeing violator. 233 Kan. at 745.

The *Thornton* court pointed out that to impose a duty upon municipalities not to pursue a lawbreaker already engaged in dangerous conduct on the city streets would obviously cast a considerable burden on such cities and have serious consequences to the community. The court noted that one of the prime functions of government is to insure law-abiding, orderly conduct. It questioned a law enforcement officer's duty when faced with a situation such as that confronting the police officers in this case. The court concluded that the imposition of a duty not to pursue would severely restrict necessary law enforcement conduct without any guaranty that serious injury to members of the public might not occur. 233 Kan. at 753. See *Reenders v. City of Ontario*, 68 Cal. App. 3d 1045, 1053-54, 137 Cal. Rptr. 736 (1977).

## PROXIMATE CAUSE

This court recently addressed the issue of proximate cause in a criminal context in *State v. Davidson*, 267 Kan. 667, 987 P.2d 335 (1999). In that case, Davidson appealed her conviction of reckless second-degree murder of an 11-year-old child who was killed by Davidson's Rottweiler dogs. The defendant contended that the State had failed to prove foreseeability as an element of proximate

cause and criminal liability. The *Davidson* court held that the State was not required to prove that the defendant knew her dogs would attack and kill someone. The court determined that it was sufficient for the State to prove that the defendant's dogs killed the child and that the defendant could have reasonably foreseen that the dogs would attack or injure someone as a result of what she did or failed to do to. The State's evidence established that Davidson's conduct contributed to the death of the child. 267 Kan. at 683.

Anderson attempts to distinguish *Davidson* by pointing out that in *Davidson*, the direct cause of the child's death was Davidson's dogs. Anderson asserts that the direct cause of Jett's death was the *criminal* act of Officer Osland. Anderson argues that Osland's criminal act was an independent or superseding cause of Jett's death.

In the context of negligence, the Restatement (Second) of Torts defines a "superseding cause" as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Restatement (Second) of Torts, § 440, p. 465 (1965). If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby. Restatement (Second) of Torts, § 449, p. 482.

In support of its argument, the State relies on *People v. Schmies*, 44 Cal. App. 4th 38, 51 Cal. Rptr. 2d 185 (1996), which involved pursuit of a motorcycle by a California Highway Patrol officer. During the pursuit, the officer negligently collided with and killed a passing motorist. The court noted that the principles of causation apply to crimes as well as torts, and that, just as in tort law, the defendant's act must be the legally responsible cause (proximate cause) of the injury, death, or other harm which constitutes the crime. 44 Cal. App. 4th at 46-47. After reviewing California precedent on causation theories in the civil and criminal context, the court noted that " '[t]he criminal law thus is clear that for liability to be found, the cause of the harm not only must be direct, but also not so remote as to fail to constitute the natural and probable

consequence of the defendant's act.' [Citation omitted.]" 44 Cal. App. 4th at 48. Regarding intervening acts of another, the court stated:

"Intervening causes in criminal cases are typically described as either 'dependent' or 'independent.' A dependent intervening cause will not absolve a defendant of criminal liability while an independent intervening cause breaks the chain of causation and does absolve the defendant. [Citation omitted.] 'An intervening cause may be a normal or involuntary result of the defendant's original act. Such a cause is said to be 'dependent,' and does not supersede; i.e., the defendant is liable just as in the direct causation case.' [Citation omitted.] An 'independent' intervening 'act may be so disconnected and unforeseeable as to be a superseding cause, i.e., in such a case the defendant's act will be a remote, and not the proximate, cause.' [Citation omitted.] In the words of the Restatement Second of Torts, again in the context of negligence, '[w]here the negligent conduct of the actor creates or increases the foreseeable risk of harm through the intervention of another force, and is a substantial factor in causing the harm, such intervention is not a superseding cause.' [Citation omitted.] Stated another way, '[t]he intervention of a force which is a normal consequence of a situation created by the actor's negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about.' [Citation omitted.]" 44 Cal. App. 4th 49.

Schmies argued that the actions of the highway patrol officers and the decedent were so inappropriate as to be a superseding cause which would break the chain of proximate cause. Responding to Schmies' argument, the California court stated:

"If we were concerned with a tort action, a disciplinary hearing, or even a criminal action against the officers, then we would be focused upon the officers' conduct and the 'reasonableness' thereof, from their point of view. In that respect we would consider the harm that was reasonably foreseeable to the officers, and whether their conduct created an unreasonable risk of harm to others. But, we reiterate, the negligence or other fault of the officers is not a defense to the charge against defendant. The fact that the officers may have shared responsibility or fault for the accident does nothing to exonerate defendant for his role. In short, whether the officers' conduct could be described with such labels as negligent, careless, tortious, cause for discipline, or even criminal, in an action against them, is not at issue with respect to the defendant here. In this sense the 'reasonableness' of the officers' conduct, focused upon their point of view and their blameworthiness for the death, is not relevant.

"The issue with respect to defendant focuses upon his point of view, that is, whether the harm that occurred was a reasonably foreseeable consequence of his conduct at the time he acted. Since the officers' conduct was a direct and specific

response to defendant's conduct, the claim that their conduct was a superseding cause of the accident can be supported only through a showing that their conduct was so unusual, abnormal, or extraordinary that it could not have been foreseen. [Citation omitted.]" 44 Cal. App. 4th at 51-52.

The *Schmies* court found that the defendant, acting with gross negligence, created a situation to which the officers responded and that as a result of the defendant's conduct and the officers' response, a vehicle collision occurred in which a third party was killed. It pointed out that the danger of an accident resulting from the pursuit was reasonably foreseeable to the defendant and concluded that the officers' collision with the victim was not a superseding cause that absolved the defendant. It affirmed the jury verdict of vehicular manslaughter with gross negligence. 44 Cal. App. 4th at 58.

Anderson distinguishes *Schmies* by pointing out that the officers' conduct in *Schmies* was accidental or negligent; whereas Officer Osland's conduct was criminal. Anderson fails to note that the *Schmies* court refused to focus on the conduct of the officers when assessing the conduct of the defendant. The *Schmies* court specifically stated that whether the officers' conduct was negligent or criminal, the result would be the same.

The negligence or other fault of Osland is not a defense to the charge against Anderson. The fact that the officer may have shared responsibility or fault for the death of Jett does not exonerate Anderson for his acts. In short, whether the officer's conduct could be described with such labels as negligent, careless, tortious, cause for discipline, or even criminal, in a criminal action against him, is not at issue with respect to the defendant. The "reasonableness" of the officer's conduct focused upon the officer's point of view, and the officer's blameworthiness for the death is not relevant.

Here, the issue of Anderson's criminal responsibility focuses upon Anderson's point of view, that is, whether the harm that occurred was a reasonably foreseeable consequence of Anderson's conduct at the time he acted. Since the trooper's conduct was a direct and specific response to defendant's conduct, the claim that the trooper's conduct was a superseding cause of the accident can be supported only by showing that the trooper's conduct was so

unusual, abnormal, or extraordinary that it could not have been foreseen.

Our test for foreseeability set out in *Davidson* is the same as that articulated by the *Schmies* court in that it focuses on the defendant's point of view, that is, whether the harm that occurred was a reasonably foreseeable consequence of the defendant's conduct at the time he or she acted or failed to act. *Davidson*, 267 Kan. at 683.

The negligence or other fault of the officer in an accident resulting from a police pursuit is not a defense to a charge against the defendant regarding the accident. The fact that the officer may have shared responsibility or fault for the accident does not exonerate the defendant. In short, whether the officer's conduct could be described with such labels as negligent, careless, tortious, cause for discipline, or even criminal, in an action against the officer, is not an issue with respect to the defendant. In this sense the "reasonableness" of the officer' s conduct, focuses upon the officer's point of view, and the officer's blameworthiness for the accident is not relevant to the defendant's acts. Applying the test stated in *Davidson*, we find that (1) Anderson's reckless speeding created a situation which resulted in a fatal accident and (2) Anderson could have reasonably foreseen that such an accident would occur as a result of what he did. Viewing the evidence in favor of the State, we conclude that the district judge erred in determining that as a matter of law Anderson's actions were too remote in time and location to be the proximate cause of Jett's death.

Reversed and remanded for trial.