IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,435

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW D. WILSON,
*Appellant.*

SYLLABUS BY THE COURT

When a defendant acts with the requisite mens rea, and that act sets events in motion that lead to a victim's death, the defendant will be criminally liable for the death unless an unforeseeable event supersedes the defendant's act and becomes the sole cause of death, thus breaking the chain of proximate causation.

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed July 6, 2018. Affirmed.

*Carl F.A. Maughan,* of Maughan Law Group LC, of Wichita, argued the cause and was on the brief for appellant.

*Barry R. Wilkerson*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  One night, Matthew Wilson broke into an apartment and began shooting the occupants. Inside the apartment, Joel Solano awoke, grabbed a gun, and hid in his room. Michael Lowery fled from Wilson into Solano's room. Mistaking Lowery for

1

the shooter, Solano shot Lowery dead. Wilson later pled no contest to premeditated murder for Lowery's death, and we affirmed his sentence on direct appeal.

Wilson now argues the district court erred when it summarily denied his postsentence plea withdrawal motion. On appeal, Wilson claims there was an insufficient factual basis to support the elements of premeditated murder because he did not actually kill Lowery—Solano did. Wilson makes the related claim that if his first argument is correct, his trial counsel was ineffective for failing to recognize this fact and advise him accordingly. Finally, Wilson suggests that because the lower court essentially ignored these arguments when Wilson asserted them pro se below, a remand would be appropriate if the record is insufficient to permit us to conduct a meaningful review.

We hold Wilson proximately caused Lowery's death by attacking those in the apartment, leading to Solano's foreseeable defensive response. Wilson—as an active shooter—created a deadly situation for the apartment's occupants, and Solano's shot was not an extraordinary intervening event that became the sole cause of Lowery's death. Because a factual basis supported the plea and a remand is unnecessary, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are not disputed. As this court recited in Wilson's first appeal:

"Dustin Ferguson and Joel Solano lived in an apartment directly across the hall from Wilson. Sometime around 2 a.m. on April 7, 2013, Ferguson returned to the apartment with Michael Lowery, Alexya Mailea, and Christine Kim after a night out in Aggieville. Around 4 a.m., Ferguson and his three guests opened the door to leave. They were met in the hallway by Wilson who immediately started shooting at them with a handgun.

2

"Ferguson, Mailea, and Kim were struck by bullets, and Ferguson pulled Mailea and Lowery back into the apartment while Kim fled down a flight of stairs. Wilson followed Kim and told her he was not going to kill her and that he was only 'there for the guys.' Wilson then returned to the apartment, shot his way through the locked front door, and entered.

"In the meantime, Lowery had run into Solano's bedroom where Solano had been sleeping with his fiancée and young daughter. Solano was awakened by the gunshots and retrieved his own handgun. Solano then shot Lowery when he came into the bedroom, mistaking him for an intruder.

"Ferguson escaped by jumping out of his bedroom window. He directed Mailea to follow him, but she was still in Ferguson's room when Wilson returned. As with Kim, Wilson assured Mailea that he was not going to kill her and that he was only 'there for the boys.' He also told her he was 'doing what he was doing' because Ferguson and Solano had too many loud parties in their apartment and that 'people deserved to get a good night's sleep.' Wilson then went to Solano's bedroom to look for the others.

"Wilson failed to enter Solano's bedroom because the door was blocked by Lowery's prone body. He ordered Solano to open the door and threatened to shoot his way into the room if Solano did not comply. Solano had heard Wilson tell Mailea he was 'there for the boys,' so he remained quiet, hoping Wilson would think no one was there. Wilson eventually gave up and left the apartment. Police took him into custody outside the building a few minutes later.

"Lowery died as a result of his gunshot wounds, while Ferguson, Mailea, and Kim were all hospitalized with serious injuries. Wilson pled no contest to one count of first-degree premeditated murder for Lowery's death, two counts of attempted first-degree premeditated murder regarding Ferguson and Solano, and two counts of aggravated battery on Mailea and Kim." *State v. Wilson*, 301 Kan. 403, 403-04, 343 P.3d 102 (2015).

3

At first, the State charged Wilson with one count of first-degree murder under alternative theories of premeditated and felony murder for Lowery's death; four counts of attempted premeditated murder for the attack against Ferguson, Kim, Mailea, and Solano; and one count of aggravated burglary. The State later filed an amended information, and the parties entered into a plea agreement. Wilson pled no contest to the charges as amended:  one count of premeditated murder, two counts of attempted premeditated murder, and two counts of aggravated battery. The State agreed to dismiss the remaining charges.

The Riley County District Court held a plea hearing the next day. Wilson confirmed that he authorized and understood the plea agreement. The court walked through the plea colloquy, and Wilson stated that he understood the rights he was waiving and the penalties he could receive; his lawyer had explained the elements the State had to prove and what defenses were available; and he was satisfied with his lawyer. When the court asked about the factual basis for the plea, the State replied:

> "It would be the State's proffer of evidence that Mr. Wilson told Alexya Mailea that he did not want to hurt her and was there for the boys. Wilson told Mailea the reason he was doing this was because of too many loud parties in the apartment. Wilson then told her . . . that he knew there were other subjects in the other bedroom and left for the other bedroom, which was Solano's. Alexya Mailea then jumped out of the window.

> "Michael Lowery had entered Solano's bedroom. Wilson attempted to enter the bedroom at some point during the shooting. Wilson had shot his way into the apartment. Solano, who was in the bedroom with Erica Campos and the couple's young child, had told Erica Campos to take the child and get in the closet, and he retrieved a handgun and had taken a position after hearing what he described as six or seven shots from inside the apartment. Solano also heard shooter—the defendant, Matthew Wilson—saying that he was there for the guys. In the chaos that followed the shooting in the hallway and the

4

shots the defendant fired at Solano's apartment door, Michael Lowery was struck by a bullet twice and killed.

"The State's theory of premeditation was based upon . . . Mr. Wilson's statement that he was there to kill the guys—or the boys—to Alexya Mailea and Christine Kim when he had contact with them. Unfortunately . . . Michael Lowery was killed inside the apartment. Wilson also made statements heard by Solano that he was there for the guys."

Defense counsel did not object to the facts proffered by the State. The court determined a factual basis existed for Wilson's no contest pleas and found him guilty on all counts.

At sentencing, the State clarified the factual basis of Wilson's pleas, stating:

"Your Honor, I think there have been some questions on clarification on the State's theory in this case. . . . [T]he bullet that caused the fatal injury to Mr. Lowery was not fired from Mr. Wilson's gun. Mr. Lowery was killed when he entered Mr. Solano's room and Mr. Solano, being in the dark with a young lady and a daughter—a very young daughter—in the closet, fired after hearing numerous shots. The theory the State proceeded under—we looked at the felony murder as well as the first-degree premeditated murder—was that the defendant, Matthew Wilson, after shooting Alexya Mailea, Christine Kim, and Dustin Ferguson, followed Christine Kim down the stairwell, where he told her he was not going to kill her, he was there for the guys. Mr. Wilson then went back upstairs and shot his way into . . . the apartment. His . . . words and actions and shooting up a locked door, State's opinion, formed the premeditation to commit murder, once he was in that apartment where the guys were located."

Defense counsel did not contest the revised facts. He told the court, "[M]y client and I conducted, discussed, and considered the facts and circumstances in this case, and Mr. Wilson elected to proceed with a no contest plea, and he entered into a plea agreement with the State, believing it was in his best interest to do so."

5

The court acknowledged the clarification and found a factual basis still existed for Wilson's first-degree murder plea. The court sentenced Wilson to life imprisonment for premeditated murder and a consecutive 310 months' imprisonment for the remaining crimes. It also imposed lifetime parole. We subsequently rejected Wilson's challenge to his consecutive sentences on direct appeal. *Wilson*, 301 Kan. at 406-07.

In 2015, Wilson timely moved pro se to withdraw his no contest pleas. Though Wilson alleged many errors, only two are relevant to this appeal: (1) a factual basis did not exist for his premeditated murder plea because he did not shoot Lowery; and (2) his trial counsel was ineffective because he failed to inform Wilson that the elements of premeditated murder were not met. The district court appointed new counsel for Wilson, who filed another plea withdrawal motion. This motion largely argued trial counsel was ineffective on other grounds. It did not expound upon Wilson's pro se challenge.

The court held a nonevidentiary hearing on the motions without Wilson present. At the hearing, defense counsel did not raise—and the court did not discuss—the factual basis underlying the plea. The court summarily denied the motion, finding Wilson failed to establish a manifest injustice because trial counsel was not ineffective and the evidence against Wilson was "overwhelming." However, the court did not make a specific finding about the factual basis for Wilson's premeditated murder plea.

Wilson appealed the summary denial of his plea withdrawal motion to this court. See K.S.A. 2017 Supp. 22-3601(b)(3) (providing for direct appeal to Supreme Court where life imprisonment imposed).

ANALYSIS

On appeal, Wilson argues the facts did not support his no contest plea to premeditated murder because he did not shoot Lowery. As a result, Wilson claims his

6

trial counsel was ineffective for failing to catch this error and object to the facts proffered by the State. Alternatively, Wilson claims the case should be remanded for an evidentiary hearing because the district court denied his plea withdrawal motion without finding a factual basis existed for the plea. At the outset, we conclude the record contains sufficient uncontested facts for us to conduct a meaningful review and decide, as a matter of law, the narrow question presented.

> "An appellate court generally reviews the denial of a motion to withdraw a plea for abuse of discretion. The defendant has the burden of proving abuse of discretion. When a motion to withdraw a plea is summarily denied without argument and additional evidence, this court applies the same procedures and standards of review as in cases arising out of K.S.A. 60-1507. This court exercises de novo review because it has the same access to the motion, records, and files as the district court, and it determines whether the motion, records, and files conclusively show that the defendant is entitled to no relief. [Citations omitted.]" *State v. Fritz*, 299 Kan. 153, 154-55, 321 P.3d 763 (2014).

"Summary disposition is appropriate if there is no substantial question of law or triable issue of fact and the files and records conclusively show the defendant is not entitled to relief on the motion." *State Kelly*, 298 Kan. 965, 969, 318 P.3d 987 (2014). The defendant bears the burden to allege facts sufficient to warrant a hearing. 298 Kan. at 969.

Because Wilson moved to withdraw his plea postsentence, the manifest injustice standard applies. See K.S.A. 2017 Supp. 22-3210(d)(2) ("To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."). To determine whether a manifest injustice occurred, we generally consider the *Edgar* factors: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." *State v. Bricker*, 292 Kan. 239, 244, 252 P.3d 118 (2011); *State v. Edgar*,

7

281 Kan. 30, 36, 127 P.3d 986 (2006). The *Edgar* factors are "'benchmarks for judicial discretion'" but "should not be relied on to the 'exclusion of other factors.'" *Bricker*, 292 Kan. at 245 (quoting *State v. Aguilar*, 290 Kan. 506, 512, 231 P.3d 563 [2010]).

K.S.A. 2017 Supp. 22-3210(a)(4) states a no contest plea may be accepted when "the court is satisfied that there is a factual basis for the plea." This statute "requires a trial court to establish that all elements of the crime charged are present before accepting a defendant's plea." *State v. Ebaben*, 294 Kan. 807, 812, 281 P.3d 129 (2012). Thus, given the way this matter is currently postured, we must first decide whether a sufficient factual basis existed for the district court to accept Wilson's plea. If a sufficient factual basis did exist, Wilson cannot prevail on any of his claims on appeal. If the district court accepted Wilson's plea based on an insufficient factual basis, a remand to the lower court to reconsider the question of manifest injustice in this light would be in order.

To convict Wilson of first-degree premeditated murder, the State had to prove Wilson "kill[ed]" Lowery "[i]ntentionally, and with premeditation." K.S.A. 2012 Supp. 21-5402(a)(1). The plain meaning of "kill" is "'to end life; to *cause* physical death,'" which connotes proximate causation. *State v. Scott*, 285 Kan. 366, 371, 171 P.3d 639 (2007) (quoting Black's Law Dictionary 886 [8th ed. 2004]); see Black's Law Dictionary 1002 (10th ed. 2014).

Wilson concedes the State presented sufficient facts of premeditated intent. Indeed, Wilson told the female victims that he was "there for the guys." The only question before us, then, is whether the State alleged sufficient facts to support the actus reus—that Wilson killed Lowery. The fact that Wilson did not fire the fatal shot is not dispositive. Instead, we must determine whether Wilson's attack *caused* Lowery's death. This requires us to revisit the principles of causation that undergird our criminal law.

Causation in a criminal case has two core elements: cause-in-fact and legal causation. Cause-in-fact requires proof that but for the defendant's conduct, the result would not have occurred. Legal causation limits a defendant's liability to the reasonably foreseeable consequences of his or her conduct. *State v. Arnett*, 307 Kan. 648, 655, 413 P.3d 787 (2018); see *State v. Anderson*, 270 Kan. 68, 77, 12 P.3d 883 (2000) ("Our test for foreseeability . . . is, whether the harm that occurred was a reasonably foreseeable consequence of the defendant's conduct at the time he or she acted or failed to act."); see also 1 LaFave, Subst. Crim. L. § 6.4, Causation (3d ed. 2017). We commonly refer to these elements together as "proximate cause." *Arnett*, 307 Kan. at 655.

Proximate causation is simple in a case when the defendant inflicts the deadly blow and the victim dies instantaneously. But "[w]hen causation is based on a chain of events, an intervening cause may absolve the defendant of liability." 307 Kan. at 655; see 40 Am. Jur. 2d, Homicide § 16 ("[U]nlawful conduct which is broken by an independent intervening cause cannot be the proximate cause of the death of another for the purpose of a conviction for homicide."). Wilson does not dispute that but for his attack, Lowery would not have been shot dead. That much is clear. The remaining question is one of foreseeability: Was Solano's shot a reasonably foreseeable consequence of Wilson's acts, or was it an unforeseeable intervening and superseding act that broke the causal chain and absolved Wilson of liability?

The facts here are unique, but the rules of causation are not. Time and time again, we have held that a cause-in-fact chain between a criminal act and a resulting homicide remains intact so long as the latter links of the chain are reasonably foreseeable given the act in question. One of the ways the foreseeability chain can be broken is when an extraordinary event supersedes and becomes the sole cause of the victim's death. By extraordinary, we simply mean unforeseeable.

9

For example, medical negligence during treatment for injuries inflicted in the course of a crime is generally foreseeable and will not form an extraordinary superseding event cutting off criminal liability for the end-result. See *State v. Rueckert*, 221 Kan. 727, 737, 561 P.2d 850 (1977), *disapproved of on other grounds by State v. Berry*, 292 Kan. 493, 254 P.3d 1276 (2011). To sever the causal chain, a doctor's missteps must be so "unusual, abnormal, or extraordinary that they could not have been foreseen" and "become the sole legal cause" of the victim's death. *State v. Kirby*, 272 Kan. 1170, 1184, 39 P.3d 1 (2002).

In *Kirby*, the defendant was convicted of reckless second-degree murder for beating his girlfriend so severely that her spleen ruptured, but the evidence suggested the victim may not have died if the emergency doctors had correctly diagnosed her injury. We held the jury instructions correctly stated that "'independent causes such as the negligence of others'" could not absolve the defendant of liability for his conduct unless "'the proximate cause of death resulted solely from erroneous treatment of the physicians.'" 272 Kan. at 1184.

Similarly in *State v. Mays*, 277 Kan. 359, 85 P.3d 1208 (2004), the defendant argued the evidence of first-degree murder was insufficient because medical negligence was the proximate cause of the gunshot victim's death. We disagreed, explaining:

> "'The concept of intervening cause in both tort and criminal law is predicated upon foreseeability. Since human beings are not infallible, some degree of a doctor's negligence is foreseeable and cannot be used by a defendant to exonerate himself. Neither can a defendant use as a defense the possibility that different or more skillful treatment might have saved the life of the deceased, and thereby avoid the consequences of his attack. Defendant must show that erroneous or unskilled medical care became the efficient intervening cause of death and superseded the effect of the wounds inflicted by defendant so as to become the proximate cause of death.'" 277 Kan. at 378 (quoting *Rueckert*, 221 Kan. at 737).

10

See *State v. Shaffer*, 223 Kan. 244, 250, 574 P.2d 205 (1977).

In a series of involuntary manslaughter cases, we invoked the same rule to determine whether the defendant's act was superseded by the negligence of another. In *Anderson*, a police car ran a red light while pursuing a speeding motorcyclist and collided with another vehicle, killing the driver. The district court found the collision was not foreseeable and dismissed the involuntary manslaughter charge against the speeding defendant. We reversed, holding the defendant's actions proximately caused the victim's death because "(1) Anderson's reckless speeding created a situation which resulted in a fatal accident and (2) Anderson could have reasonably foreseen that such an accident would occur as a result of what he did." 270 Kan. at 77. We reasoned,

> "In an action for injuries suffered in an accident resulting from a police pursuit, the issue of foreseeability with respect to defendant focuses upon his point of view, that is, whether the harm that occurred was a reasonably foreseeable consequence of the defendant's conduct at the time he or she acted. Since the officer's conduct was a direct and specific response to defendant's conduct, the claim that the officer's conduct was a superseding cause of the accident can be supported only through a showing that the officer's conduct was so unusual, abnormal, or extraordinary that it could not have been foreseen." 270 Kan. 68, Syl. ¶ 6.

In the same vein, we held in *State v. Betts*, 214 Kan. 271, 278, 519 P.2d 655 (1974), that to acquit the defendant of involuntary manslaughter for killing a pedestrian with his car, "the jury would have had to find that [the victim's] conduct was the *sole* cause of her death—that appellant's drunkenness had nothing to do with it." Indeed, we have long held that a victim's negligence must become a superseding cause to extinguish a defendant's liability for a homicide involving a vehicle:

"While contributory negligence is no defense in a prosecution for a driving offense of involuntary manslaughter or vehicular homicide, it is a circumstance to be considered along with all other evidence to determine whether the defendant's conduct was or was not the proximate cause of a decedent's death. In some instances, a decedent's contributory negligence may have been a substantial factor in his or her death and a superseding cause thereof; it may have intervened between a defendant's conduct and the fatal result so as to be itself the proximate cause." *State v. Chastain*, 265 Kan. 16, Syl. ¶ 7, 960 P.2d 756 (1998).

See *State v. Brammer*, 301 Kan. 333, 343, 343 P.3d 75 (2015); *Scott*, 285 Kan. at 369; *State v. Bowser*, 124 Kan. 556, 559, 261 P. 846 (1927).

Finally, in the felony-murder context we have often stated that "a defendant will be held liable for a death that occurs during the commission of a felony unless there is an extraordinary intervening event that supercedes [*sic*] the defendant's act and becomes the sole legal cause of death." *State v. Jackson*, 280 Kan. 541, 547, 124 P.3d 460 (2005); see *State v. LaMae*, 268 Kan. 544, 555, 998 P.2d 106 (2000). Recently in *State v. Nesbitt*, 308 Kan. __, 417 P.3d 1058 (2018), we considered whether there was sufficient evidence that the defendant caused the victim's death when he raped the victim and the victim died 21 days later from blood clots that formed as a result of her injuries. The defendant claimed the evidence did not establish a direct causal connection between the felony and the homicide, which is another way of saying the rape did not proximately cause the victim's death. We examined the causal chain to determine whether there was an "'extraordinary intervening' event that cut[] off [the] foreseeability" of the victim's death; something that "supersede[d] the rape as the sole cause." 417 P.3d at 1066. Finding none, we held the victim's death "followed directly and inexorably from the violence inflicted upon her in the attack." 417 P.3d at 1066.

Thus, *Nesbitt* affirmed that "[a] direct causal connection exists between the crime underlying felony murder and the death that follows from it unless an extraordinary intervening event supersedes the defendant's act and becomes the sole legal cause of death. An intervening event does not qualify as extraordinary if it was foreseeable." 308 Kan. __, Syl. ¶ 3; see *State v. Beltz*, 305 Kan. 773, Syl. ¶ 1, 388 P.3d 93 (2017); *State v. Phillips*, 295 Kan. 929, 941, 287 P.3d 245 (2012). Applying this rule, we have held: "Criminal violence that erupts during a drug sale is not an extraordinary intervening event. Such violence, when deadly, cannot supersede a defendant's criminal participation in the sale and will not cut off his or her criminal liability for felony murder." *Beltz*, 305 Kan. at 779; see *State v. Beach*, 275 Kan. 603, 614, 67 P.3d 121 (2003) ("A person with a large amount of cash intent on engaging in an illegal transaction is a foreseeable target of a violent crime."). The same is true for a defendant who provokes defensive action during a robbery:

> "'A felon's attempt to commit a robbery sets in motion a chain of events which should cause him to contemplate that a death might occur. This is particularly true of a robber who carries a deadly weapon . . . and forces his way into an occupied dwelling. The impulse for an individual to resist the sudden show of force, to defend himself or to come to the aid of a family member or loved one, is a basic human instinct. Under such circumstances every robber who expects human opposition to his quest to steal, as he must when he commits a statutory robbery, is a potential assassin because he knows he may be forced to use his weapon either to carry out his criminal act or to escape without being pursued and captured by his victim.'" *State v. McClelland*, 301 Kan. 815, 822, 347 P.3d 211 (2015) (quoting *State v. Branch and Bussey*, 223 Kan. 381, 383, 573 P.2d 1041 [1978]).

See *Phillips*, 295 Kan. at 942 ("[I]t is foreseeable that violence will erupt during an aggravated robbery in which the robber carries a gun. The very nature of an aggravated robbery is violent.").

Taken together, these cases boil down to a common causation rule that applies with equal force here: when a defendant acts with the requisite mens rea, and that act sets events in motion that lead to a victim's death, the defendant will be criminally liable for the death unless an unforeseeable event supersedes the defendant's act and becomes the sole cause of death, thus breaking the chain of proximate causation. And we have found it foreseeable that a dangerous crime—such as a drug sale or robbery—would provoke a violent or defensive response. See *Beltz*, 305 Kan. at 779; *McClelland*, 301 Kan. at 822. Put simply, it is foreseeable that violence begets violence.

Here, Wilson's attack created instant panic in the apartment. It is foreseeable that an active shooter will trigger the deeply embedded human fight or flight reflex. Lowery fled and Solano fought back to protect himself and his family. In this way, Solano's shot was by no means an extraordinary event that broke the causal chain and became the sole cause of Lowery's death. On the contrary, it is entirely foreseeable that Wilson's gunfire would trigger defensive action because "[t]he impulse for an individual to resist the sudden show of force, to defend himself or to come to the aid of a family member or loved one, is a basic human instinct." *Bussey*, 223 Kan. at 383. We hold a factual basis supported Wilson's plea because: (1) he does not contest the element of premeditation; and (2) his attack proximately caused Lowery's death.

Lastly, Wilson argues the case should be remanded for an evidentiary hearing because the district court denied his plea withdrawal motion without finding that a factual basis existed, as required by Supreme Court Rule 183(j) (2018 Kan. S. Ct. R. 223). Indeed, the court's finding that "the evidence against the defendant was overwhelming" was less than precise. Wilson claims this error prevents us from conducting meaningful review.

14

Generally, Wilson is correct that "[t]he K.S.A. 60-1507 procedure governing hearings should apply to motions to withdraw guilty plea filed after imposition of sentence." *State v. Jackson*, 255 Kan. 455, 459, 874 P.2d 1138 (1994). Supreme Court Rule 183, which governs K.S.A. 60-1507's procedure, requires a district court to "make findings of fact and conclusions of law on all issues presented." Supreme Court Rule 183(j) (2018 Kan. S. Ct. R. 225). In *State v. Moncla*, 269 Kan. 61, 65, 4 P.3d 618 (2000), we explained that the "fundamental problem" with a district court's failure to abide by Rule 183(j) is that it "impedes appellate review." Here though, our review is not impeded—the record is fully developed with respect to the narrow question of law presented, and the parties do not dispute the relevant facts. For these reasons, a remand is unnecessary.

Affirmed.