NOT DESIGNATED FOR PUBLICATION

No. 119,103

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KASTON L. HUDGINS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*


MEMORANDUM OPINION

Appeal from Cherokee District Court; ROBERT J. FLEMING, judge. Opinion filed April 26, 2019.
Affirmed.

*Jason P. Wiske*, of Law Office of Jason P. Wiske L.L.C., of Pittsburg, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., SCHROEDER, J., and STUTZMAN, S.J.


PER CURIAM:  Kaston L. Hudgins appeals from the order of the Cherokee County
District Court denying his motion for relief under K.S.A. 60-1507. Hudgins based his
claim for relief on the contention that his trial counsel was ineffective. We agree with the
conclusions reached by the district court and affirm.


FACTS AND PROCEDURAL BACKGROUND

We need not belabor the tragic facts of this case that arose from an event in July
2009, but a brief summary is necessary to place Hudgins' present contentions in context.

1

The succinct account included by our Supreme Court in its opinion on Hudgins' direct appeal is best suited to that purpose:

"A Cherokee County sheriff's deputy initiated a traffic stop after he saw a vehicle driven by Hudgins run a stop sign. Hudgins pulled over but sped away while the deputy was making initial radio contact with dispatchers. The uniformed deputy pursued Hudgins in a marked patrol car with its top, front, and back emergency lights activated and an audible siren in operation. The chase began about 9:15 p.m. While evading the deputy, Hudgins periodically turned his vehicle's headlights off and on, drove in the left-hand lane toward oncoming traffic, and passed at least one other vehicle on the shoulder. Vehicle speeds reached 120 miles per hour.

"About 11 miles from where the pursuit began, Hudgins crashed into the rear of another vehicle at an intersection. His vehicle was estimated to be travelling about 98 miles per hour with the headlights turned off the instant before the collision. The two occupants in the second vehicle, a mother and her 13-year-old daughter, died. Hudgins was 22 years old at the time. His blood alcohol level was .15 grams per 100 milliliters of blood.

"The State charged Hudgins with two counts of first-degree felony murder based on the underlying felony of fleeing or attempting to elude a law enforcement officer and one count of fleeing and eluding a law enforcement officer. A jury convicted him of all three counts. He was sentenced to two concurrent hard-20 sentences for the felony murders, plus a consecutive 6-month prison sentence for felony fleeing and eluding. Hudgins timely appeals. Jurisdiction is proper under K.S.A. 2014 Supp. 22-3601(b)(3) (life sentence)." *State v. Hudgins*, 301 Kan. 629, 630-31, 346 P.3d 1062 (2015).

In March 2016, Hudgins filed a K.S.A. 60-1507 motion, arguing his trial counsel, Shane Adamson, was ineffective for failing to: (1) consult or hire an expert to testify how his blood alcohol level of .15 affected his mental capabilities; (2) preserve a defense based on a theory that the police officer involved in his high-speed chase violated the Cherokee County Sheriff's Department high-speed pursuit policy and therefore contributed to the car accident; (3) raise a defense of voluntary intoxication and also request a voluntary intoxication instruction; and (4) argue Hudgins lacked the requisite

2

mental state for the crime charged. Hudgins also argued Adamson's cumulative errors rendered him ineffective.

The district court set an evidentiary hearing on Hudgins' 60-1507 claims. Hudgins was present in person, with his counsel for the motion. The only witnesses at the hearing were Adamson and the Cherokee County sheriff. Hudgins called the sheriff as a witness solely to lay the foundation to enter the high-speed pursuit policy into evidence. Adamson testified that during a discussion in chambers with the court and counsel for the State, he discussed his intent to introduce the high-speed pursuit policy. To shift blame from Hudgins, Adamson wanted to present to the jury the idea that "but for the actions of the deputy, which were against the policy, . . . this whole event would have never occurred." The district court, however, found the policy was not relevant to elements of the charged crime, so the policy and any examination related to it was not relevant to Hudgins' criminal proceeding and was inadmissible.

Adamson also testified about his trial strategy concerning Hudgins' blood alcohol level at the time of trial. He explained he did not consult with or call an expert to testify regarding the effect of Hudgins' blood alcohol level because he believed fleeing and eluding was a general intent crime, so a voluntary intoxication defense was not an option. Since voluntary intoxication was unavailable, Adamson requested and was granted an instruction on a lesser included offense of involuntary manslaughter associated with a DUI. Adamson then argued Hudgins' blood alcohol level in relation to the lesser included offense.

Hudgins also questioned Adamson about Hudgins' previous competency treatment. Adamson said he did not consider using a mental defect defense. Again, he considered fleeing and eluding to be a general intent crime, and he noted the principles of competency are the ability to understand the charges and the ability to assist in preparing the defense. Adamson said he had many discussions with Hudgins about trial concepts

and strategy. He testified Hudgins "was constantly conducting his own legal research and sending me cases," and Adamson said he and Hudgins "had a lot of discussion" when he "would meet with him and discuss those issues with him and whether or not in my belief they were valid or not valid."

In the course of questioning from the State, Adamson read from the transcript of an in chambers conference at which Adamson, Hudgins, the district judge, and prosecutor were present. In that conference, Adamson verified with Hudgins, on the record, that he had discussed with Hudgins the use of a guilt-based defense, meaning one that admitted guilt, but only of lesser offenses than those charged. Hudgins then acknowledged his consent to Adamson's use of that defense. Adamson testified that after he reviewed the case materials and met with his client he was "reasonably convinced" that this defense was the only approach he could take. He characterized the State's evidence as "overwhelming." Adamson testified he had discussed this assessment with Hudgins "on many occasions." From his discussions with Hudgins, Adamson believed Hudgins was able to assist with his defense.

At the end of the evidentiary hearing, the district court denied Hudgins' K.S.A. 60-1507 motion. The court stated:

> "Mr. Hudgins, I have to say that in the 21 years I've sat on the bench, from a prosecution point of view, this was one of the strongest cases that I've seen. It was uncontroverted that you were fleeing from law enforcement, and you were traveling at . . . an extremely high rate of speed and . . . at times your speed approached 120 miles an hour.
>
> ". . . I recall the evidence that you turned your lights on and . . . off . . . and passed vehicles on the right side of the road, and it was nighttime.
>
> ". . . [T]here [was] a four-way stop . . . and you collided into [the two victims] . . . as a result of that collision they both died."

4

"There was never any question about your involvement, whether you were driving. . . .

. . . .

"So I did instruct the jury on all of the lesser included offenses that [trial counsel] requested, including involuntary manslaughter, associated with a DUI.

"With respect to those specific issues you've raised that the trial counsel—that [trial counsel] failed to consult, investigate and use an expert to testify as to your blood alcohol level, he indicated that he thought that the crime . . . was a general intent crime as opposed to a specific intent crime. I thought that too.

"I don't know that it was addressed specifically but I thought then and I still think it is. So it wouldn't have made my difference and that really wouldn't have been relevant.

". . . [T]he jury in this case had the opportunity . . . to . . . convict[] you of manslaughter."

The district court went on to explain that: (1) a theory under comparative fault involving the pursuit policy would not have been relevant in this criminal case; (2) use of an expert on Hudgins' blood alcohol level or a request for a voluntary intoxication instruction would have been denied because fleeing and eluding was a general intent crime; and (3) the court in its observation never perceived Hudgins as having any form of mental disability or inability to assist in his defense. Finally, the court reminded Hudgins that trial counsel presented a compelling argument for ordering his sentences to run concurrently rather than consecutively, although two victims' lives were lost. As a result, the district court sentenced Hudgins to concurrent life sentences with a mandatory minimum of 20 years.

Hudgins timely appeals the district court's denial of his motion.

ANALYSIS

Within Hudgins' broad contention that Adamson was ineffective as his trial counsel, he has made four specific claims: (1) failure to consult or hire an expert to testify

about Hudgins' ability to form intent with a blood alcohol level of .15; (2) failure to properly preserve for appeal a request for introduction at trial of the Cherokee County Sheriff's Department high-speed pursuit policy; (3) failure to pursue a voluntary intoxication defense to the felony fleeing and eluding charge; and (4) failure to argue Hudgins lacked the mental state to be convicted of the charges. Hudgins further argues cumulative errors by Adamson denied him a fair trial.

When the district court has had an evidentiary hearing on a claim of ineffective assistance of counsel, we review the district court's factual findings using a substantial competent evidence standard and the legal conclusions de novo. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of trial counsel was deficient under the totality of the circumstances, and (2) the defendant was prejudiced, meaning there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. A reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

6

If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, counsel's decision is virtually unchallengeable. Strategic decisions made after a less than comprehensive investigation are reasonable exactly to the extent a reasonable professional judgment supports the limitations on the investigation. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013).

*Voluntary intoxication defense; expert on effect of alcohol*

Hudgins argues Adamson was ineffective for failing to pursue a voluntary intoxication defense and for failing to consult with or hire an expert on the effect of his blood alcohol level on his ability to form intent. Whether fleeing or attempting to elude a police officer was a general intent or specific intent crime is at the heart of each of those arguments. The State asserts that Hudgins' trial counsel was not ineffective because fleeing or eluding under K.S.A. 2009 Supp. 8-1568(b)(1)(C) was a general intent crime and a voluntary intoxication defense was, therefore, unavailable for any of Hudgins' convictions.

"'Whether a criminal statute establishes a general intent or a specific intent offense is a legal question over which appellate courts exercise unlimited review.'" *State v. Kershaw*, 302 Kan. 772, 776, 359 P.3d 52 (2015). "'[V]oluntary intoxication is not a defense to general intent crimes, [although it] may be used to negate the intent element of a specific intent crime.'" *State v. Hilt*, 299 Kan. 176, 192, 322 P.3d 367 (2014). "Typically, a general intent crime does not require the State to prove the defendant intended the specific harm or result." *State v. Seba*, 305 Kan. 185, 211, 380 P.3d 209 (2016).

Hudgins' argument for use of his intoxication level as a part of his defense focuses on the crime of fleeing or attempting to elude a police officer for which he was convicted

7

and which formed the underlying felony for his two felony murder convictions. We should be clear at the outset of our review that, under our caselaw, felony murder is not a specific intent crime. *State v. Robinson*, 256 Kan. 133, 136, 883 P.2d 764 (1994).

At the time of Hudgins' crimes, our criminal code described the relevance of intoxication as a defense in this way:

> "An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind." K.S.A. 21-3208(2).

In 2009, the crime of fleeing or attempting to elude a police officer was defined as:

> "Any driver of a motor vehicle who *willfully fails or refuses* to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop, and who: (1) Commits any of the following during a police pursuit: (A) Fails to stop for a police road block; (B) drives around tire deflating devices placed by a police officer; (C) engages in reckless driving as defined by K.S.A. 8-1566 and amendments thereto; (D) is involved in any motor vehicle accident or intentionally causes damage to property; or (E) commits five or more moving violations." (Emphasis added.) K.S.A. 2009 Supp. 8-1568(b)(1).

Hudgins contends that "willfully" in that statute made it a specific intent crime.

In *State v. Bruce*, 255 Kan. 388, 874 P.2d 1165 (1994), the Supreme Court's review included a jury conviction for child abuse. One of Bruce's arguments involved a claim that a voluntary intoxication instruction should have been given. The court described that argument as follows:

8

"Voluntary intoxication may be a defense to a crime requiring a specific intent. *State v. Sterling,* 235 Kan. 526, Syl. ¶ 2, 680 P.2d 301 (1984). The defendant recognizes that this court in *State v. Hupp,* 248 Kan. 644, 652-53, 809 P.2d 1207 (1991), held that the words 'cruelly beating or inflicting cruel and inhuman corporal punishment' do not require a specific intent to injure. However, he observes that the crime of child abuse (K.S.A. 21-3609) also includes the phrase 'willfully torturing,' which he contends does require specific intent, and he contends that because the case went to the jury on all three theories of child abuse, the jury should have been instructed on voluntary intoxication as a defense to child abuse by means of willful torture." 255 Kan. at 392.

The district court had instructed the jury in *Bruce* that the first element of proof for the charge of abuse of a child was: "That the defendant willfully tortured, cruelly beat, or inflicted cruel and inhuman bodily punishment upon a child," and that "[w]illfully means conduct that is purposeful and intentional and not accidental." 255 Kan. at 393.

The Supreme Court analyzed the question in this way:

"Where a crime requires a specific intent, an instruction on voluntary intoxication as a defense to the crime may be appropriate. K.S.A. 21-3208(2); *State v. Sterling,* 235 Kan. 526, Syl. ¶ 2, [680 P.2d 301 (1984)]. 'The distinction between a general intent crime and a crime of specific intent is whether, in addition to the intent required by K.S.A. 21-3201, the statute defining the crime in question identifies or requires a further particular intent which must accompany the prohibited acts.' 235 Kan. 526, Syl. ¶ 1. *In* Sterling*, this court held that criminal damage to property under the theory of willfully damaging or injuring property under K.S.A. 21-3720(1)(a) did not require specific intent such that an instruction on the voluntary intoxication defense was required*, but this court recognized that voluntary intoxication may be a defense to criminal damage to property under K.S.A. 21-3720(1)(b), which required injuring or damaging property 'with intent to injure or defraud an insurer or lienholder.' 235 Kan. at 530. Hence, *the question here is whether 'willfully torturing' requires a specific intent to injure in addition to the general intent required.*" (Emphases added.) 255 Kan. at 394.

Bruce argued that "torture" did, in fact, require "a specific intent to inflict pain or to injure." But the Supreme Court disagreed, concluding that "[a] specific intent to injure is not implicit in the phrase 'willfully torturing.'" 255 Kan. at 394.

The crime of fleeing or attempting to elude a police officer prescribed no particular intent. We find that, in the context of the statute, the plain meaning of "willfully fails or refuses to bring such driver's vehicle to a stop" describes an act done "on purpose," separating a criminal failure to stop from a failure occurring unknowingly or accidentally. Neither "willfully damaging or injuring property" in *Sterling*, nor "willfully torturing" in *Bruce* constituted a specific intent requirement. We find willfully failing or refusing to stop is likewise not a requirement for specific intent and we agree with the district court and Adamson that the fleeing or attempting to elude charge against Hudgins was a general intent crime.

As the district court pointed out after the hearing on the 60-1507 motion, the jury was given the opportunity to convict Hudgins of the lesser offense of *involuntary* manslaughter and instead found him guilty of the primary charge. Adamson was not ineffective for failing to ask for a voluntary intoxication instruction and the district court did not err in failing to give one.

Hudgins also argues Adamson was ineffective for failing to consult an expert regarding the effect of alcohol and how it diminishes a person's mental capacity. Since we have found that both Adamson and the district court correctly classified the fleeing and eluding charge as a general intent crime, precluding a voluntary intoxication defense, evidence of the effect of Hudgins' level of intoxication on his thought processes would have been irrelevant and inadmissible. Adamson was allowed to argue Hudgins' level of intoxication with respect to the lesser offense, and he was not ineffective for failing to consult or hire an expert for that purpose.

10

*Lack of requisite mental state*

Hudgins next maintains that the fact he once had been found incompetent to stand trial required his attorney to raise a defense based on mental disease or defect. First, Hudgins offers no more on this point than a conclusory statement unsupported by pertinent authority. As a result, this claim either should be deemed waived and abandoned, or it should be denied. See *State v. Pewenofkit*, 307 Kan. 730, 731, 415 P.3d 398 (2018) (failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue); *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issues not adequately briefed are deemed waived and abandoned).

Second, however, even if the merits of this argument are considered, the record from the 60-1507 hearing on this question is unequivocally contrary to this claim. Adamson testified that Hudgins not only understood his charges and could assist in his defense, but explained how Hudgins did his own legal research and provided it to Adamson, who then discussed with him whether the cases Hudgins found would or would not be valid for his case. Adamson described discussing the defense strategy with Hudgins, who also consented to that strategy on the record with the court, in chambers.

The district judge noted that throughout the underlying proceedings, he had no reason to believe that Hudgins had a mental disability or that he could not understand the proceedings against him. In fact, after receiving treatment, Hudgins was given an additional competency hearing. Before finding Hudgins competent to stand trial, the district court heard testimony from a licensed psychologist who stated: "My opinion is that [Hudgins] does understand the charges against him. He understands the proceedings against him. And he has the ability and capacity to join with his attorney in forming a defense." We find no merit in this claim.

11

*High-speed pursuit policy*

During the trial, outside the presence of the jury, the State asked the district court to exclude any use of the Cherokee County Sheriff's Department high-speed pursuit policy. Adamson argued that for his client to have a fair trial, the jury should be allowed to consider the role of the pursuing deputy in the case. The district court acknowledged that the policy might be relevant in a civil action, but agreed with the State that adherence to, or violation of, the policy was not relevant in the criminal case. The district court ordered that the policy not be used.

After the district court's ruling, Adamson made an oral proffer of the policy and formally noted his objection. In his direct appeal, Hudgins argued that the district court erred by excluding use of the policy in his trial, but the Supreme Court found "the trial transcript does not reflect that a written department policy was actually marked as an exhibit or provided to the district court informally." As a result, the court found "except for counsel's conclusory statements, there is nothing for this court to review to determine the claimed relevancy of this excluded evidence," and declined to review that issue on its merits. 301 Kan. at 650-51.

In ruling on Hudgins' K.S.A. 60-1507 motion, the district court reiterated its finding that the policy was irrelevant and consequently rejected Hudgins' argument that the failure to preserve that issue for appeal constituted ineffective assistance of counsel. Hudgins now argues the district court erroneously reached that conclusion.

Hudgins and the State both direct us to *State v. Anderson*, 270 Kan. 68, 12 P.3d 883 (2000), in making their arguments regarding the relevance, if any, of the pursuit policy. In that case, our Supreme Court ruled that:

"The negligence or other fault of the officer in an accident resulting from a police pursuit is not a defense to a charge against the defendant regarding the accident. The fact that the officer may have shared responsibility or fault for the accident does not exonerate the defendant. In short, whether the officer's conduct could be described with such labels as negligent, careless, tortious, cause for discipline, or even criminal, in an action against the officer, is not an issue with respect to the defendant. In this sense the 'reasonableness' of the officer's conduct, focuses upon the officer's point of view, and the officer's blameworthiness for the accident is not relevant to the defendant's acts." 270 Kan. at 77.

In the face of that definitive statement by the Supreme Court, Hudgins nonetheless argues the court in *Anderson* left an opening for consideration of the actions of the pursuing deputy in his case. He relies on this statement concerning the circumstances in *Anderson*:

"Since the trooper's conduct was a direct and specific response to defendant's conduct, the claim that the trooper's conduct was a superseding cause of the accident can be supported only by showing that the trooper's *conduct was so unusual, abnormal, or extraordinary that it could not have been foreseen*." (Emphasis added.) 270 Kan. at 76-77.

Hudgins fails, however, to note the *Anderson* court's application of that analysis, when it found:

"Our test for foreseeability set out in [*State v. Davidson*, 267 Kan. 667, 987 P.2d 335 (1999)] . . . focuses on the defendant's point of view, that is, whether the harm that occurred was a reasonably foreseeable consequence of the defendant's conduct at the time he or she acted or failed to act.

". . . Applying the test stated in *Davidson,* we find that (1) Anderson's reckless speeding created a situation which resulted in a fatal accident and (2) Anderson could have reasonably foreseen that such an accident would occur as a result of what he did." 270 Kan. at 77.

13

As the Supreme Court recounted on Hudgins' direct appeal, Hudgins initially responded to the deputy's traffic stop by pulling over, but he then sped away from the deputy and drove at speeds up to 120 miles per hour at night, with lights on and off, at times in the lane of oncoming traffic and on the shoulder. As the court found in *Anderson*, we have no hesitation in finding Hudgins' actions created the situation that led to the tragic deaths of the innocent victims, and we find Hudgins easily could have foreseen the deputy's pursuit and the likelihood of an accident as a result of his actions.

We find the principle enunciated in *Anderson* controls, and neither the negligence of the deputy nor any other characterization of the deputy's actions was a defense to, or relevant for consideration of, Hudgins' actions. The district court correctly found the failure at trial to preserve the issue of exclusion of the policy for appeal did not constitute ineffective assistance of counsel.

*Cumulative error*

Finally, Hudgins presents a broad unsupported assertion that "numerous cumulative errors of counsel" combined to constitute ineffective assistance of counsel. Error cannot be "cumulative" when we have found none to exist. We find no cumulative error when the record fails to support the errors a defendant raises on appeal. *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015), and even a single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018). There is no merit to this unsupported claim.

Affirmed.